IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:21-cv-00498-RM-KLM

JORY CASS,

    Plaintiff,

v.

EVELYN ENCISO and AIRBNB, INC.,

    Defendants.

### MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS

Defendant Airbnb, Inc. ("Airbnb"), by and through its undersigned counsel, hereby moves to compel Plaintiff Jory Cass ("Plaintiff" or "Cass") to arbitrate his claim against Airbnb and to stay this lawsuit against Airbnb until resolution of the arbitration. Per D.C.COLO.LCivR 7.1, counsel for Airbnb conferred with Plaintiff's counsel. Plaintiff opposes the relief requested.

### INTRODUCTION

Plaintiff's claim against Airbnb is subject to binding, contractual arbitration and thus cannot proceed in this forum. In this lawsuit, Plaintiff Cass alleges that his former romantic partner, Defendant Enciso, committed computer fraud, civil theft, and conversion, by improperly accessing and altering Plaintiff's Airbnb account, and using that account to list on Airbnb's platform the property where Plaintiff and Ensico formerly lived together. Plaintiff asserts one cause of action against Airbnb under the Colorado Consumer Protection Act (the "CCPA"). Plaintiff claims that Airbnb engaged in a deceptive trade practice by allowing Enciso to continue to list the property on its platform without verifying that she had lawful possession or control of it.

4815336.3

Plaintiff's relationship with Airbnb is contractual and governed by Airbnb's Terms of Service ("TOS"). That contract requires Plaintiff to arbitrate all disputes against Airbnb that arise out of use of the Airbnb platform and services. It also requires that an arbitrator decide whether Plaintiff's dispute with Airbnb is subject to arbitration. By his allegations, Plaintiff concedes that his claim against Airbnb expressly arises out of use of his Airbnb account and use of Airbnb's online platform to list his property. Airbnb's automated, computerized business records confirm that Plaintiff is an Airbnb accountholder and affirmatively assented to the TOS on multiple occasions. In fact, the Airbnb online platform cannot be used to list or book accommodations without first assenting to the TOS and its mandatory arbitration provision. Thus, this Court lacks jurisdiction over Plaintiff's claim against Airbnb. Plaintiff must bring any claims against Airbnb in arbitration and his claim before this Court should be stayed.

**STATEMENT OF FACTS**

**A. Plaintiff's Allegations Demonstrate that His Claim Arises Out of Use of His Airbnb Account and the Airbnb Platform.**

Plaintiff and his former romantic partner, Defendant Enciso, lived together at 7583 Lamar Court, Arvada Colorado, 80003 (the "Property"). Shortly after they moved in, Plaintiff used his Airbnb account to list the Property on Airbnb's platform and designated Enciso as his cohost for the Property's listing. According to Plaintiff, after he and Enciso broke up, Enciso accessed Plaintiff's Airbnb account (via the password Plaintiff apparently had shared with her) and changed the password, accountholder information, and payment information. Enciso then continued to list the Property for rent through the Airbnb platform, both through Cass's account and through her own Airbnb account. Plaintiff has asserted claims against Enciso for computer fraud, violation of the CCPA, civil theft, and conversion. Plaintiff has asserted only one cause of action against

Airbnb for violation of the CCPA, claiming that Airbnb improperly permitted Enciso to list the Property on the Airbnb platform without verifying that she owned or had authorization to do so.[1] In sum, Plaintiff alleges that Airbnb improperly allowed his former co-host, Enciso, to continue hosting their shared listing on Airbnb without his permission. As is evident, Plaintiff's claim arises out of and relates to his use of the Airbnb online platform and his Airbnb account.

### B. Airbnb's Terms of Service (TOS) Require Plaintiff to Submit His Claim to Arbitration.

#### 1. The Airbnb Platform

Airbnb provides an online platform that connects third-parties who wish to offer their unique accommodations (called "Hosts") with third-party travelers seeking to book accommodations (called "Guests," and together with "Hosts," "Members"). Declaration of Darien Shepherd ¶ 2, attached hereto as Exhibit 1. As the TOS makes clear, Airbnb is not a party to these booking agreements, which are made between Hosts and Guests. *Id*. Hosts alone are responsible for listing their accommodations on Airbnb's platform. *Id*. Airbnb does not own or control the accommodations that Hosts list; nor does it operate, manage, or otherwise have or grant any interest in such accommodations. *Id.* Moreover, Airbnb does not endorse or warrant the existence or legality of any properties listed on its platform. *Id*. Nor is Airbnb responsible for investigating or verifying the representations Hosts make when listing properties on the platform. *Id*.

#### 2. Plaintiff Assented to the TOS

The relationship between Airbnb and its Members is contractual and governed by the TOS. Before a Member can list or book an accommodation through Airbnb's online platform, he must

---

[1] Airbnb will be filing a Rule 12(b) motion to dismiss the claim against it.

first consent to the TOS. Shepherd Decl. ¶¶ 5-8, Exs. C-E. The TOS is presented to registrants via a hyperlink located directly below the on-screen sign-up buttons presented during the account registration process and is later presented again every time the TOS is updated. *Id*. To complete the registration process, registrants must consent to the TOS by affirmatively clicking a checkbox next to the hyperlink that reads: "By clicking Sign up or Continue with, I agree…." *Id*. If they do not click the checkbox, the registration process ends, and the registrant cannot list or book accommodations through Airbnb's online platform. *Id*. In short, it is impossible to use the Airbnb online platform without first assenting to the TOS.

Airbnb also updates the TOS from time to time. When the TOS is updated, Members must accept the updated TOS before they can access their accounts and/or book accommodations. Shepherd Decl. ¶ 7. Airbnb notifies Members of TOS updates by email that summarizes the material changes and provides the updated TOS by hyperlink. *Id*. Members must click to indicate their assent to the updated TOS before they can continue to use their accounts. *Id*. The notification also includes a "Disagree" button and if it is clicked, the Member is logged out and cannot use his or her account. *Id*. Airbnb also puts a pop-up screen on its website that notifies all users that the TOS has been updated, presents the updated terms by either hyperlink or scroll box, and requires Members click an "agree" button in order to continue using the website. *Id*.

Airbnb captures and records the date upon which each Member accepts the TOS in its business records. Airbnb's business records confirm that Plaintiff created an Airbnb account on March 5, 2018 and consented to the TOS on that date. *Id.* ¶ 9. Airbnb's records further confirm that in addition to consenting to the TOS when he created his account, Plaintiff subsequently assented to the TOS three additional times. *Id.* at ¶ 16.

### 3. The TOS Contains a Broad Arbitration Provision That Delegates all Gateway Issues to the Arbitrator

The TOS applies broadly to all uses of Airbnb's online platform, content, and services. Shepherd Decl., Ex. F (TOS) p. 1. The very first paragraph of the version of Airbnb's TOS to which Plaintiff consented when registering his Airbnb account (the "operative TOS") expressly notified Plaintiff in **bold** and all capital letters that Section 19 includes an agreement to arbitrate all disputes. TOS, p. 1. The paragraph states:

> **PLEASE NOTE: SECTION 19 OF THESE TERMS CONTAINS AN ARBITRATION CLAUSE AND CLASS ACTION WAIVER THAT APPLIES TO ALL AIRBNB MEMBERS. . . . .**

*Id*. (emphasis added). "Section 19" is a hyperlink to the arbitration provision. The arbitration provision is expressly broad and unequivocally requires arbitration of all disputes against Airbnb that arise out of or relate to its platform and services:

> **19.4** *Agreement to Arbitrate*. **You and Airbnb mutually agree that any dispute, claim or controversy arising out of or relating to these Terms or the breach, termination, enforcement or interpretation thereof, or to the use of the Airbnb Platform, the Host Services, or the Collective Content (collectively, "Disputes") will be settled by binding individual arbitration (the "Arbitration Agreement"). If there is a dispute about whether this Arbitration Agreement can be enforced or applies to our Dispute, you and Airbnb agree that the arbitrator will decide that issue.**

TOS, p. 20.

The arbitration provision also expressly requires arbitration of all disputes involving the "**breach, termination, enforcement or interpretation**" of the arbitration provision itself. *Id*. And, it expressly states that disputes regarding the scope of the agreement are to be decided by the arbitrator: "**If there is a dispute about whether this Arbitration Agreement can be enforced or applies to our Dispute . . . the arbitrator will decide that issue**." *Id*.

- 5 -

## ARGUMENT

Based upon federal, California, and Colorado law, Plaintiff is bound by the TOS to arbitrate his claim against Airbnb and should be compelled to do so. The express terms of the TOS provide that the Federal Arbitration Act governs, which dictates a strong federal policy favoring arbitration. Plaintiff indisputably assented to the TOS, and therefore agreed to be bound by its arbitration provision. Because assent is clearly established, the only remaining issue is whether the delegation clause in the TOS, which delegates all initial issues regarding the arbitrability of disputes to the arbitrator, is enforceable. The answer is yes, as the U.S. Supreme Court recently and unanimously held, when a contract delegates threshold questions of arbitrability to the arbitrator, a court must honor the parties' contractual decision and refer the matter to arbitration without exception. *Henry Schein, Inc. v. Archer & White Sales, Inc.,* 586 U.S. --, 139 S. Ct. 524, 528 (2019).

Plaintiff assented to the TOS. The delegation clause in the TOS is clear and unmistakable and compels arbitration of all gateway issues, including scope. As such, this dispute must be compelled to arbitration and this litigation stayed pending the outcome of the arbitration.

### I.     The Federal Arbitration Act Governs

The arbitration provision in the TOS expressly states that it is governed by the Federal Arbitration Act ("FAA"): "This Arbitration Agreement evidences a transaction in interstate commerce and thus *the Federal Arbitration Act governs the interpretation and enforcement of this provision*." TOS, p. 21. As the U.S. Supreme Court has made clear, the FAA—and the body of federal law developed pursuant to it—governs the interpretation and application of an arbitration provision that is made expressly subject to its provisions. *DIRECTV, Inc. v. Imburgia*, 577 U.S.

47 (2015) (confirming parties can contractually agree to designate FAA as governing law). And, as the Supreme Court has further held, the FAA preempts any inconsistent state law. *Id.* at 53 (holding "the judges of every State must follow" the FAA). Accordingly, the FAA and the body of federal law developed pursuant to it applies here.

Section 2 of the FAA codifies a strong federal policy favoring arbitration, making arbitration provisions "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2; *see also AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (federal policy favoring arbitration requires rigorous enforcement of arbitration agreements). Section 2 creates a heavy presumption in favor of arbitrability that requires courts to resolve all doubt as to the scope of arbitrable issues in favor of arbitration. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983) (holding that "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration," and "any doubts concerning the scope of arbitral issues should be resolved in favor of arbitration"); *Volt Info. Scis., Inc. v. Bd. of Trs.*, 489 U.S. 468, 475-76 (1989) (noting "settled" rule that questions of arbitrability in contracts subject to the FAA "must be resolved with a healthy regard for the federal policy favoring arbitration"); *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985) (noting that while the parties' intentions control interpretation of a contract subject to the FAA, "those intentions are generously construed as to issues of arbitrability").

The strong presumption in favor of arbitration limits the court's inquiry on a motion to compel arbitration to two issues: (1) whether the parties agreed to arbitrate; and (2) if so, whether the agreement encompasses the asserted claims. *Chiron Corp. v. Ortho Diagnostics Sys., Inc.*, 207

F.3d 1126, 1130 (9th Cir. 2000); *Pikes Peak Nephrology Assocs., P.C. v. Total Renal Care*, 2010 U.S. Dist. LEXIS 42694, at *13 (D. Colo. Mar. 30, 2010) ("Before the party may be compelled to arbitrate under the [FAA], the district court must engage in a limited inquiry to determine whether a valid arbitration agreement exists between the parties and whether the specific dispute falls within the scope of that agreement.") (internal quotation marks and citation omitted; alteration in original); *1mage Software v. Reynolds & Reynolds Co*., 273 F. Supp. 2d 1168, 1174 (D. Colo. 2003) (compelling arbitration after determining that the parties agreed to arbitrate and the claims fell within the scope of that agreement). Once the court finds that both are satisfied (as they are here), it must compel arbitration. *Dean Witter Reynolds Inc. v. Byrd,* 470 U.S. 213, 218 (1985) (stating the FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed") (emphasis in original)); *Chiron Corp.*, 207 F.3d at 1130; *Bradberry v. T-Mobile*, *USA, Inc.*, 2007 WL 1241936, at *4 (N.D. Cal. Apr. 27, 2007) (confirming inquiry limited to assent and scope); *O'Connor v. BMW of N. Am.*, 2020 WL 5260516, at **3-5 (D. Colo. July 23, 2020) (noting arbitration mandatory after the Court determines a valid agreement to arbitrate and question of scope).

**II.    The Court Must Compel Arbitration of Plaintiff's Claims Because Plaintiff Agreed to Arbitrate His Claims Against Airbnb**

Airbnb's burden of establishing Plaintiff's agreement to arbitrate is not a heavy one, and it is easily satisfied here. 9 U.S.C. § 4; *see also, Vernon v. Qwest Commc'ns Int'l, Inc*., 857 F. Supp. 2d 1135, 1148 (D. Colo. 2012), *aff'd*, 925 F. Supp. 2d 1185 (D. Colo. 2013) (explaining moving party's obligation is to establish simple existence of arbitration agreement). Because arbitration agreements are contracts, assent is analyzed under "ordinary state-law principles that govern the

formation of contracts." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 943–45 (1995) (arbitration is a matter of contract law, and analysis turns on whether an agreement was formed). The TOS contains a California choice of law provision.[2] Under California law, online contracts—like the TOS—are treated no differently than any other type of contract: assent is established by either actual or constructive knowledge of contract terms, and courts uniformly recognize that affirmatively clicking an online "accept"-type button constitutes an objective manifestation of assent. *Loewen v. Lyft, Inc.*, 129 F. Supp. 3d 945, 957–58 (N.D. Cal. 2015) (enforcing an arbitration provision within a TOS where plaintiffs had the opportunity to scroll through the terms prior to assent and then clicked "I agree" to assent to the terms of the TOS); *Swift v. Zynga Game Network, Inc.*, 805 F. Supp. 2d 904, 910-12 (N.D. Cal. 2011); see *Tompkins v. 23andMe, Inc.*, 2014 WL 2903752, at *5 (N.D. Cal. June 25, 2014) (holding that plaintiffs received adequate notice and consented to the TOS—and the arbitration provision contained therein—where they clicked a button "during the account creation and registration process . . . that appeared near a hyperlink to the TOS to indicate acceptance of the TOS"), *aff'd*, 840 F.3d 1019 (9th Cir. 2016); see *also Vernon*, 857 F. Supp. 2d at 1149 (explaining actual or constructive notice of agreement terms manifests mutual assent).

Courts applying California law regularly enforce "clickwrap" or "scroll-wrap" agreements—such as the TOS—because they require users to manifest their assent by clicking "Agree" or an equivalent button, which constitutes an objective manifestation of assent to the

---

[2] *See* TOS, p. 22.  This court routinely enforces choice-of-law provisions. *See, e.g., Zhou v. Sec. Life of Denver Ins. Co.,* 2020 U.S. Dist. LEXIS 234164, at *11 (D. Colo. Dec. 14, 2020) ("[W]e will apply the law chosen by the parties unless there is no reasonable basis for their choice or unless applying the chosen state's law would be contrary to the fundamental policy of the state whose law would otherwise govern.") (internal quotation marks and citation omitted).

contract terms. *See* Shepherd Decl., Exs. C - E; *Loewen,* 129 F. Supp. 3d at 957–58; *Tompkins*, 2014 WL 2903752, at *9; *Swift*, 805 F. Supp. 2d at 910–12 (N.D. Cal. 2011) (holding that under California law, click-through agreements require acknowledgment of assent by click); *U.S. v. Drew*, 259 F.R.D. 449, 462 n.22 (C.D. Cal. 2009) ("Clickwrap agreements have been routinely upheld by circuit and district courts.") (internal quotation marks and citation omitted).[3]

Courts throughout the United States have already considered Airbnb's sign-up procedure and have compelled arbitration upon finding that the process adequately notifies registrants that they are agreeing to arbitrate their disputes with Airbnb. *See e.g., Morris v. Airbnb*, D. W.D. Okla., Case No. CIV-19-1157 (Sept. 30, 2020); *Hanley, Christopher v. Giuly & Co., LLC and Airbnb*, Clark County, Nevada District Court Case No. A-20-813939-C (August 27, 2020); *Dunbar v. Airbnb, Inc.*, D. Haw., Case No. 19-00648 JMS-WRP (April 1, 2020); *Donaldson, et al. v. Sonesta Nola Corp.*, Eastern District Louisiana District Court Case No. 19-14706 (January 24, 2020); *Du Ju v. Lacombe, et al.,* Case No. 3:18-cv-05309-BHS (W.D. Wash. Dec. 5, 2018); *Plazza, et al. v. Airbnb, Inc., et al.,* Case No. 1:16-cv-01085-VSB (S.D.N.Y Jan. 26, 2018); *Selden v. Airbnb, Inc.,* 2016 WL 6476934 (D.D.C. Cir. Nov. 1, 2016).

As the court in *Selden* explained:

> The Court must grant Airbnb's motion [to compel arbitration] . . . the applicable law is clear: Mutual arbitration provisions in electronic contracts—so long as their existence is made reasonably known to consumers—are enforceable, in commercial disputes and discrimination cases alike. And Airbnb's sign-up procedures were sufficiently clear to place Mr. Selden on notice that he was agreeing to the company's Terms of Service when he created an account.

---

[3] Again, Colorado law is aligned with California, and this Court routinely enforces "clickwrap" or "scrollwrap" agreements. *See, e.g., Health Grades, Inc. v. Hamot Med. Ctr.*, 2006 U.S. Dist. LEXIS 108299, at *7 (D. Colo. Feb. 27, 2006) (noting "numerous courts have upheld … 'click-wrap' agreements").

*Selden*, 2016 WL 6476934, at *2.

The result can be no different here. The evidence unquestionably establishes that Plaintiff had actual knowledge of the TOS and thus the obligation to arbitrate. Plaintiff assented to Airbnb's TOS through substantially the same sign-up process and after being presented with screens that were substantially similar, if not identical, to those presented to the Members in *Hollywood*, *Stutland*, *Fogel*, *Mazaheri*, *Plazza, Senders, McCluskey*, and *Selden*. *See, e.g.*, *Selden*, 2016 WL 6476934, at *5 (confirming TOS was adequately disclosed and describing substantively identical sign-up process where the plaintiff was presented with the same or similar sign-up screens as Plaintiff here); Shepherd Decl. ¶¶ 9 - 16 (describing Plaintiff's sign-up process here). As the *Selden* court noted, the hyperlinked language under the sign-up box ("By signing up, I agree to Airbnb's Terms of Service") was conspicuous and, therefore, sufficient to put the plaintiff there on notice of the TOS. *Selden*, 2016 WL 6476934, at *2. In other words, by "choosing to sign up for Airbnb, Selden manifested his assent to the Terms of Service." *Id.*, at *2, 5. So, too, did Plaintiff here—he could not have completed the Airbnb account registration process and listed an accommodation through the Airbnb online platform had he not assented to the TOS. In fact, Airbnb's business records confirm that Plaintiff clicked his assent to the TOS on three separate occasions—each time assenting to the arbitration provision therein. Shepherd Decl., ¶¶ 9 - 6; Exs. A - B.

### III. The Delegation Clause is "Clear and Unmistakable" and Thus Requires Arbitration of All Gateway Issues Including Scope

Because assent is established and the TOS delegates any remaining threshold issues of arbitrability to the arbitrator, the only question remaining is whether the delegation clause is enforceable. Shepherd Decl., Exs. F, G (delegating disputes regarding "enforcement, interpretation, or validity" of mandatory individual arbitration provision to the arbitrator). If it is,


the Court's analysis ends, and it must send the claims to arbitration. The Supreme Court, the Ninth Circuit, California state courts, and the Tenth Circuit agree that "clear and unmistakable" delegation clauses are enforceable. And when a contract expressly delegates threshold questions of arbitrability, such as validity, enforceability, and scope to the arbitrator, a court must honor the parties' contractual decision and refer the matter to arbitration without exception, and without making its own determinations about arbitrability. *Henry Schein*, 139 S. Ct. at 529 ("When the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract. In those circumstances, a court possesses no power to decide the arbitrability issue. That is true even if the court thinks that the argument that the arbitration agreement applies to a particular dispute is wholly groundless."); *First Options of Chicago*, 514 U.S. at 943; *Rent-A-Center, West. Inc. v. Jackson*, 561 U.S. 63, 69, 71-74 (2010) (upholding enforceability of an "agreement to arbitrate threshold issues" regarding the arbitrability of the dispute); *Sandquist v. Lebo Automotive*, 1 Cal. 5th 233, 243 (2016) ("'[W]ho decides' [issues of arbitrability] is a matter of party agreement"); *Bruni v. Didion*, 160 Cal. App. 4th 1272, 1286 (2008) (explaining "[b]ecause the parties are the masters of their collective fate, they can agree to arbitrate almost any dispute - even a dispute over whether the underlying dispute is subject to arbitration"); *Dream Theater, Inc. v. Dream Theater*, 124 Cal. App. 4th 547, 551 (2004) (noting that who decides arbitrability depends on the parties' contract, and compelling arbitration of gateway issues); *Belnap v. Iasis Healthcare*, 844 F.3d 1272, 1280 (10th Cir. 2017) ("[T]he question 'who has the primary power to decide arbitrability' turns upon what the parties agreed about that matter.") (additional internal quotation marks and citation omitted).

Delegation clauses are enforceable if they are "clear and unmistakable." *Rent-A-Center., West, Inc.*, 561 U.S. at 79–80; *see also Portland Gen. Elec. Co. v. Liberty Mut. Ins. Co.*, 862 F.3d 981, 985 (9th Cir. 2017), *as amended* (Aug. 28, 2017) (parties may delegate the adjudication of gateway issues to the arbitrator if they "clearly and unmistakably" agree to do so); *Momot v. Mastro*, 652 F.3d 982, 988 (9th Cir. 2011); *Dream Theater*, 124 Cal App. 4th at 552 (when parties "clearly and unmistakably" delegate issues of arbitrability to the arbitrator, the arbitrator, not the court, decides gateway issues of arbitrability); *O'Connor*, 2020 WL 5260416, at *5 ("[W]hen parties clearly and unmistakably show their intent to have the arbitrator decide issues of arbitrability, the court must refer such issues to the arbitrator."). Courts agree that express delegation language in the arbitration agreement satisfies the "clear and unmistakable" standard. *Rent-A-Center*, 561 U.S. at 79–80; *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1208–09 (9th Cir. 2016) (*en banc*) (evidence of a "clear and unmistakable" delegation includes "an express agreement to do so"); *Momot*, 652 F.3d at 987-88 (holding issues of arbitrability delegated to arbitrator where language of agreement clearly and unmistakably delegated gateway issues); *Malone v. Super. Ct.*, 226 Cal. App. 4th 1551, 1560 (2014) (holding contractual language constituted clear and unmistakable delegation); *O'Connor*, 2020 WL 5260416, at *5 (holding contract language delegating scope of the clause to arbitrator sufficiently clear and unmistakable); *Pikes Peak*, 2010 U.S. Dist. LEXIS 42694, at **13-14 (same).

The delegation language in the arbitration provision here is "clear and unmistakable." It expressly states that "any dispute . . .arising out of or relating to these Terms or the applicability, breach, termination, validity, enforcement or interpretation thereof . . . will be settled by binding individual arbitration." TOS, p. 20. Accordingly, the parties have expressly delegated all disputes

concerning the validity, enforceability, or interpretation of the arbitration provision to the arbitrator, and the Court's inquiry must end.[4]

Indeed, courts have repeatedly interpreted language more ambiguous than Airbnb's TOS as meeting the "clear and unmistakable" threshold constituting valid delegation. In *Mohamed*, for example, the court did not hesitate to find that the phrase "the enforceability, revocability or validity" was sufficiently "clear and unmistakable" to delegate all issues pertaining to arbitrability to the arbitrator. *Mohamed v. Uber Techs., Inc.*, 836 F.3d 1102, 1106–08 (9th Cir. 2016). Likewise, in *Momot*, the court affirmed the arbitrability of gateway issues where the contract language was similar to that at issue here, and stated: "If a dispute arises out of or relates to this Agreement, the relationships that result from this Agreement, the breach of this Agreement *or the validity or application of any of the provisions of this Section 4* [the arbitration provision] . . . the dispute shall be resolved exclusively by binding arbitration." *Momot*, 652 F.3d at 988 (emphasis added). And in *Pikes Peak*, this Court determined it lacked jurisdiction to determine the scope of the arbitration provisions and directed parties to arbitrate that issue based on an arbitration provision that stated "[a]ny controversy, dispute, or claim arising out of or in connection with this Agreement, *or the breach termination or validity hereof*, shall be settled by final and binding arbitration…" *Pikes Peak*, 2010 U.S. Dist. LEXIS 42694, at *16 (emphasis added).

---

[4] Additionally, the arbitration provision incorporates the American Arbitration Association ("AAA") Consumer Arbitration Rules, which give the arbitrator the authority to rule on his or her own jurisdiction. TOS, p. 23; *see also* AAA Consumer Arbitration Rule 14(a) available at www.adr.org, under "Rules" tab ("The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim."); *Pikes Peak*, 2010 U.S. Dist. LEXIS 42694, at *13 (holding that incorporation of the AAA rules constitutes clear and unmistakable evidence of agreement to arbitrate questions of arbitrability).

The language of the TOS is substantively indistinguishable from the sufficiently "clear and unmistakable" delegation clauses enforced in *Mohamed, Momot*, and *Pikes Peak*. The parties have therefore authorized the arbitrator to rule on his or her own jurisdiction by interpreting the contract to determine whether Plaintiff's claim falls within its scope. Accordingly, the elements of assent and scope are both satisfied here, and this Court must compel arbitration.

## IV.     The Litigation Must Be Stayed Pending Arbitration

Section 3 of the FAA requires courts to stay litigation upon referring a dispute to arbitration. 9 U.S.C. § 3. Here, a stay is appropriate because Plaintiff agreed to arbitrate all claims as well as any gateway issues of enforceability, scope, and validity. *MediVas, LLC v. Marubeni Corp.*, 741 F.3d 4, 9 (9th Cir. 2014) (adopting rebuttable presumption that actions are stayed pending arbitration if not expressly dismissed); *Grear v. Comcast Corp.*, 2015 WL 926576, at **1-2 (N.D. Cal. Mar. 3, 2015) (staying litigation under FAA § 3 upon referring dispute to arbitration); *Pikes Peak*, 2010 U.S. Dist. LEXIS 42694, at *27 (staying litigation under FAA § 3 upon referring case to arbitration).

## CONCLUSION

The arbitration provision is clear, and so is federal, California and Colorado law: this case cannot proceed in this Court because Plaintiff assented to the arbitration provision and its delegation clause. This Court should issue an order compelling Plaintiff to arbitrate his claims pursuant to Airbnb's TOS, and stay the litigation pursuant to section 3 of the FAA.

Dated: March 30, 2021.

             **_s/ Jacqueline V. Roeder_**
             Jacqueline V. Roeder
             Tess Hand-Bender
             DAVIS GRAHAM & STUBBS LLP
             1550 17th Street, Suite 500
             Denver, Colorado, 80202
             Telephone:  303.892.9400
             Facsimile: 303.893.1379
             Email: jackie.roeder@dgslaw.com

             *Attorneys for Defendant Airbnb, Inc.*

- 17 -

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing **MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS** was filed and served via **CM/ECF** e-file system on this 30th day of March, 2021, addressed to the following:

| | |
|---|---|
| Victoria Edwards | Jeffrey M. Villanueva |
| Jackson Kelly, PLLC | Zachery M. Graupman |
| 1099 18th Street, Suite 2150 | Jeffrey M. Villanueva, P.C. |
| Denver, CO 80202 | 1755 Blake Street, Suite 225 |
| Email: Victoria.edwards@jacksonkelly.com | Denver, CO 80202 |
| | Email: jeff@jmvpclaw.com |
| | zac@jmvpclaw.com |

*s/ Sandra Abram*
Sandra Abram