**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:21-CV-00498-RM-KLM

**Jory Cass,**

     Plaintiff.

vs.

**Evelyn Enciso,**

     Defendant.

---

**FIRST AMENDED VERIFIED COMPLAINT FOR**
**DAMAGES AND INJUNCTIVE RELIEF**
**(28 U.S.C. § 1331; Federal Question)**

---

Plaintiff, Jory Cass ("**Plaintiff**"), for his First Amended Verified Complaint for Damages and Injunctive Relief ("**FAC**") against Defendant Evelyn Enciso ("**Defendant**"), states as follows:

**<u>THE PARTIES</u>**

1.    Plaintiff, Jory Cass, is an individual residing at 7583 Lamar Court, Arvada, Colorado 80003 (the "**Property**"). Plaintiff is not engaged in military service of the United States and is engaged in a civilian occupation.

2.    Defendant, Evelyn Enciso, is an individual temporarily residing at the Property. Defendant is not engaged in military service of the United States, and upon information and belief is not currently employed.

Exhibit 1
Motion to Amend

## JURISDICTION AND VENUE

3.      Plaintiff brings this action for damages and immediate and permanent injunctive relief pursuant to the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 ("**CFAA**"), and the value of the claims exceed $5,000.00 in aggregate value for less than a one-year period. Thus, this Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331.

4.      Plaintiff also brings interrelated state law claims of conversion, civil theft, appropriation of likeness or name, and intentional infliction of emotional distress, over which this Court has supplemental jurisdiction.

5.      Venue is proper under 28 U.S.C. § 1391 because all or a substantial part of the events or omissions giving rise to the claims herein occurred within this judicial district. All of the events alleged herein occurred within the State of Colorado, County of Jefferson. Also, the Property at issue is located within the County of Jefferson, Colorado.

## GENERAL ALLEGATIONS

I.      **Background Facts**

6.      Plaintiff moved to Colorado to purchase and live at the Property in July of 2019.

7.      Plaintiff is the owner in fee simple of the Property by way of a Warranty Deed dated July 24, 2019, wherein Plaintiff is named "Grantee". Attached hereto as **Exhibit 1** is a true and correct copy of the Warranty Deed.

8.      Shortly after purchasing the Property, Plaintiff began renting out a portion of the Property as an Airbnb rental in order to offset the costs of the mortgage. The bottom portion of the Property is separated from the main part of the house and has a separate entrance accessible by keypad lock.

2

Exhibit 1
Motion to Amend

9.    Defendant lived at the Property, on and off, while she was in a relationship with Plaintiff.  Defendant was a house guest of Plaintiff's and did not contribute any monies to the real property or living expenses; she was not employed.

10.    Plaintiff and Defendant broke up between June and July 2020.

11.    On July 19, 2020, Defendant moved out of the Property.

12.    Subsequently, Defendant requested Plaintiff allow her to stay at the Property because she needed somewhere to stay:



13.    Plaintiff allowed her to stay at the Property temporarily in the guest room of the main portion of the Property (not the rental unit).

14.    Between August 10, 2020 and August 18, 2020, Defendant repeatedly requested that she and Plaintiff get back together and made numerous advances toward Plaintiff. Each and every request to get back together was denied by Plaintiff.

15.    On August 19, 2020, Plaintiff returned to the Property at approximately 5:00 p.m., after staying the night at a friend's house the evening before.

16.    Upon entering the Property, Plaintiff saw that his bed was wrapped in plastic and all the internal components were missing. Upon belief, Defendant was preparing to steal or sell Plaintiff's bed, for which he paid $10,000.00.

4822-0315-0054.v1

Exhibit 1
Motion to Amend

17.     At that time, Plaintiff requested that Defendant leave the Property, but Defendant refused. Plaintiff called the non-emergency police.

18.     Defendant scratched Plaintiff and tore his shirt during this incident. Upon the police officers' arrival, Plaintiff reported Defendant's actions. The police officers on the scene observed the scratches and torn shirt, and made note of same in the police reports.

19.     Plaintiff also told the police officers that Defendant was planning to steal his bed while he was away from the Property.

20.     However, Defendant misstated the truth of the matter, and Plaintiff was instead taken into custody for the night, charged with DV Criminal Mischief.

21.     Also due to Defendant's misstatements, Plaintiff was prevented from regaining full access to the Property until Defendant voluntarily left the Property approximately nine months later on April 1, 2021.

22.     During this time, Defendant made no mortgage payments, tax payments or utility payments for the Property, and did not maintain the Property.

23.     Also, during this time, Defendant was uncooperative about allowing Plaintiff access to the Property. Despite numerous requests, Plaintiff was only allowed back unto his Property on two occasions during the nine months, via civil assists, on August 24, 2020 and February 2, 2021 ("**Civil Assist/s**"), and then only for a short time frame on both occasions.

24.     Upon belief, Defendant collected Plaintiff's mail received at the Property during the August 2020 to April 2021 time frame.

4822-0315-0054.v1

Exhibit 1
Motion to Amend

## II.     **Defendant Obtains Unauthorized Access to Plaintiff's Computers and Online Accounts**

### A.     **Facebook Account**

25.     While Plaintiff was in custody on August 19, 2020, Defendant accessed one of Plaintiff's two personal desktop computers at the Property, logged into his Facebook account, and changed Plaintiff's "Relationship Status" from "Single" to "Married"; she did this without authorization:[1]



### B.     **Airbnb Account**

26.     On August 21, 2020, Defendant again accessed one of Plaintiff's two desktop computers at the Property, and without his knowledge or authorization, used his username and

---

[11]     Defendant filed a Petition for Dissolution of Marriage in Colorado on or about August 24, 2020, claiming the parties were in a common law marriage. Upon belief, Defendant logged on to Plaintiff's Facebook account to change Plaintiff's relationship status in order to support her Petition. However, the Petition was dismissed on December 4, 2020, on stipulation that "The Petitioner and Respondent hereby acknowledge and state that they are not married to one another under any statutory or common law." *See* Joint Motion to Dismiss Petition for Dissolution of Marriage, a true and correct copy of which is attached hereto as **Exhibit 2**.

4822-0315-0054.v1

**Exhibit 1
Motion to Amend**

password to his work desktop computer to access his Airbnb, Inc. ("**Airbnb**") account and change the settings so that the account was no longer associated with him. Defendant changed all the personal information on Plaintiff's Airbnb account, including Plaintiff's name and his date of birth.

27.     Defendant also changed the email address on Plaintiff's Airbnb account to her own email address as shown in the following message:



28.     In addition, Defendant changed the password and profile picture on the Airbnb account, and used Plaintiff's personal email address to verify the information.

29.     Defendant also changed the payout method on Plaintiff's Airbnb account shown as follows, to allow her to gain access to any and all proceeds being generated from the Airbnb rental:



4822-0315-0054.v1

Exhibit 1
Motion to Amend

30. On August 22, 2020, Defendant also canceled a personal trip that Plaintiff had booked on his Airbnb account, and initiated a refund to attempt to collect the money that Plaintiff had paid towards the trip.

31. Between August 22, 2020 and February 2021, Defendant rented out the full Property under her own name, despite having no legal ownership in the Property. *See* Property's Airbnb Profile, attached hereto as **Exhibit 3**; *see also* Airbnb Host Profile of "Evelyn" attached hereto as **Exhibit 4**.

32. In order to rent out the Property, Defendant also changed the passcode to the keypad lock of the Airbnb rental without Plaintiff's knowledge or authorization. Plaintiff discovered this fact when the cleaning service he hired to clean the Property attempted to enter the unit on September 1, 2020 but could not access the Property. Plaintiff had sent the cleaning service to be able to prepare the area for the new Airbnb guests, who were arriving the next day.

33. Plaintiff was required to cancel the Airbnb showings he had lined up due to Defendant's actions.

34. As shown by the Property Profile and Host Profile reviews, Defendant rented out the Property to numerous guests for profit. None of this profit was shared with Plaintiff.

35. As shown by the Property Profile, Defendant charged these guests $99.00 per night plus fees. Accordingly, Defendant presumably collected $99.00 per night less the three percent (3%) fee charged by Airbnb.

36. Plaintiff reported Defendant's activities to the police and Airbnb. Airbnb has since restricted Plaintiff's and Defendant's access to the Airbnb platform.

4822-0315-0054.v1

**Exhibit 1**
**Motion to Amend**

37.     On or about March 5, 2021, under Plaintiff's pending Motion for Temporary Restraining Order, Defendant, upon belief, used Plaintiff's stolen identification to try to regain access to Airbnb. Attached as **Exhibit 5** are true and correct copies of email communications Defendant received from Airbnb concerning the illegal use of his identification.

   **C.     Ring Account**

38.     Most recently, on April 10, 2021, Defendant, without Plaintiff's knowledge or permission, attempted to access Plaintiff's Ring account. Defendant's attempt was blocked, and Plaintiff was notified of the breach. Attached as **Exhibit 6** is a true and correct copy of the email communication Plaintiff received from Ring concerning the access attempt.

**III.    Destruction of Plaintiff's Work Laptop Data**

39.     On August 24, 2020, Plaintiff was provided a "Civil Assist" to gather his belongings at the Property.

40.     When the police questioned Defendant about the whereabouts of Plaintiff's work laptop, Defendant told the officer Plaintiff had took it with him.

41.     Nevertheless, upon searching for the laptop, the police found it hidden on a shelf at the top of the closet of the bedroom Defendant was sleeping in underneath other items.

42.     After the August 24, 2020 "Civil Assist," Plaintiff immediately went to a friend's apartment to try to log in to his laptop as he had a crucial work meeting the following morning.

43.     When Plaintiff went to log in, the name of the laptop was changed to "Everything," and the password was changed.

44.     Plaintiff was not able to access the laptop.

4822-0315-0054.v1

Exhibit 1
Motion to Amend

45.     Plaintiff contacted a computer technician who took the laptop over the weekend in an attempt to re-access it without the loss of confidential work files and software.

46.     After hours of attempting to back up the hard drive and restore the laptop, it was determined that Defendant had reset the laptop to factory settings and all the data was lost. This almost caused Plaintiff to lose his job.

47.     Accordingly, due to Defendant's actions, significant and irreplaceable data and proprietary and confidential work information on Plaintiff's business laptop was destroyed. This action is brought to obtain damages resulting from this conduct and to stop and prevent further injury to Plaintiff.

## IV.     Plaintiff Denied Access to His Vehicle from August 24, 2020 to February 2, 2021.

48.     During the August 24 Civil Assist, Plaintiff attempted to collect his vehicle. Plaintiff paid for the vehicle, and title was solely in his name. Also, the car was his only mode of transportation.

49.     Defendant had her own car.

50.      However, when the police officer asked Defendant during this Civil Assist if it was okay if Plaintiff took his car, Defendant said Plaintiff could not take his car.

51.     As a result, Defendant was left with no mode of transportation from August 24, 2020 to February 2, 2021, when Defendant (upon pressure from Plaintiff's counsel), relinquished physical possession of the car to Plaintiff during the February 2 Civil Assist.

## V.     Plaintiff's Dogs Were Reported to Animal Control and Placed in a Shelter

52.     In mid-September 2020, while Plaintiff was denied full access to the Property, Defendant reported Plaintiff's two dogs to animal control to have them placed in a shelter.

9

Exhibit 1
Motion to Amend

53.     The dogs were Plaintiff's Property.

54.     Defendant did not inform Plaintiff of her actions.

55.     It was only by chance that Plaintiff found out about Defendant's actions. Defendant told the animal shelter that the dogs were hers, but approximately one week after having the dogs placed in the shelter, came back to pick up only one of the two dogs. The shelter found this to be suspicious and looked for chipping devices on the dogs.

56.     With the chipping devices, the shelter was able to locate Plaintiff, the true owner of the dogs. It was at this time that Plaintiff was told the dogs were going to be adopted out within 24 hours. Plaintiff picked up the dogs from the shelter in September 2020.

57.     Plaintiff paid $2,000 per month to board the dogs, between September 2020 and April 2021, when he was finally able to regain physical possession of the Property.

**VI.     Items and Legal Documentation Stolen from the Property**

58.     During the August 24, 2020 and the February 2, 2021 Civil Assists, Plaintiff also determined some of his jewelry was missing, including his Apple Watch and his graduation ring totaling approximately $700.00.

59.     In addition, Plaintiff could not find his legal documents when he searched for them on February 2, 2021. Plaintiff kept his legal documents in a cabinet in his home office. Defendant denied any knowledge about the location of these documents.

60.     During the February 2, 2021 assist, Plaintiff also discovered Defendant had hidden his mail in a drawer underneath her belongings. Based on this activity, Defendant has reason to believe Defendant took Plaintiff's mail that had been delivered to the Property between August 2020 and February 2021, during which time Plaintiff did not have full access to the Property.

4822-0315-0054.v1

Exhibit 1
Motion to Amend

61.     Plaintiff subscribes to the United States Postal Service's daily "Informed Delivery" emails, which emails provide him with pictures of his mail coming to the Property. Defendant did not receive most of the mail that had been delivered to the Property for him during this time. Defendant never requested or allowed for Plaintiff to retrieve or open this mail, and the majority of mail was not left for Plaintiff at the Property when Plaintiff took physical possession again on April 1, 2021.

62.     Plaintiff regained access to the Property on April 1, 2021. At this time, Plaintiff noticed that the following items were stolen from the Property: a $10,000.00 Sleep Number Bed (the same bed that Plaintiff told the police officers on August 19, 2020 Defendant was planning to steal); a $1,500.00 LG 60-inch TV with TV mount; a $350.00 road bike (worth $2,500.00-$3,000.00 new; it was the USPS Lance Armstrong bike); a $600.00 set of dumbbell weights and weight plates; a $300.00 luggage set; $250.00 dog crates; dog collars for walking and dog training collars totaling $250.00; a $75.00 portable Bluetooth charger; and a $120.00 Ring doorbell security camera. Plaintiff also confirmed at this time that his Apple Watch and other jewelry were in fact missing from the Property.

63.     Plaintiff paid for these stolen items. These items were at the Property when Plaintiff last had physical possession of the Property in August 2020.

64.     In addition, Plaintiff confirmed on his move back into the Property that Defendant had taken all his legal documents including his Social Security Card, his passport, his immigration papers, and upon belief, had made copies of his closing documents from the purchase of the Property. Plaintiff reported the stolen and tampered items to the police. A stolen identity report was also filed with the Federal Trade Commission.

11

Exhibit 1
Motion to Amend

65.     Despite requests to Defendant's counsel, Defendant has not returned any of these stolen items to Plaintiff; this is extremely disturbing to Plaintiff.

66.     Plaintiff is concerned that Defendant may continue to use his personal identifying information to unlawfully access other of Plaintiff's online accounts, and that Defendant will use Plaintiff's identity to run up his credit and cause him financial ruin.

67.     Plaintiff is also concerned that Defendant may illegally sell his information for a profit.

68.     Plaintiff kept these important documents in a particular cabinet in his home office. It appears Defendant pulled all these documents from the cabinet, rummaged through them, and left a few items behind on Plaintiff's home office desk upon her departure on April 1, 2021.

69.     This action is brought to obtain Plaintiff's legal documents and to prevent Defendant from causing any irreparable damage to Plaintiff's identity and financial and legal status.

**VII.**   **Damage to the Property**

70.     The Property had also suffered major damage during Plaintiff' absence. The new stovetop, interior walls and perimeter fence of the Property were damaged, as was the roof to the Property's garage. Also, a downspout on the drainage for the Property had fallen off and was crushed.

71.     Upon belief, Defendant has in her possession legal documents that Plaintiff needs in order to make an insurance claim on this damage.

4822-0315-0054.v1

Exhibit 1
Motion to Amend

## COUNT I – VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT

72.   Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

73.   The CFAA imposes civil liability for unauthorized access or damage to a "protected computer."

74.   Under the CFAA, a protected computer means "an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical, arithmetic, or storage functions" which includes without limitation: desktop and laptop computers; cell phones; and websites, as long as those devices are "used in or affecting interstate or foreign commerce or communication[.]" dma(e).

75.   The CFAA prohibits:

A.   intentionally accessing a protected computer, without authorization or by exceeding authorized access, and obtaining information from a protected computer under § 1030(a)(2)(C);
B.   knowingly and with intent to defraud accessing a protected computer, without authorization or by exceeding authorized access, to obtain anything of value or further a fraud under § 1030(a)(4);
C.   knowingly, intentionally, and without authorization causing the transmission of a program, information, code, or command to a protected computer, and causing damage under § 1030(a)(5)(A); and
D.   intentionally accessing a protected computer without authorization and, as a result of such conduct, recklessly causing damage and loss under §§ 1030(a)(5)(B) and 1030(a)(5)(C).

76.   For a claim under § 1030(a)(5)(A), a "transmission" can be accomplished either over the Internet or through a physical medium such as a compact disc.

77.   Pursuant to § 1030(c)(4)(A)(i)(I), this Court has jurisdiction to hear a civil claim under the CFAA if there is a loss to one or more persons during any one-year period aggregating at least $5,000.00 in value.

4822-0315-0054.v1

Exhibit 1
Motion to Amend

78.     In August of 2020, Defendant accessed Plaintiff's work laptop, and one or more of his desktop computers, his email account, his Facebook account, and his Airbnb account without authorization ("**Devices**"). Also, in March and April 2021, Defendant through the Devices and other improper means attempted to access Plaintiff's Airbnb account and his Ring account  without authorization (collectively, the "**Accounts**").

79.     Defendant's actions violated 18 U.S.C. § 1030(a)(2)(C) because she accessed the Devices and Accounts without authorization, and intentionally in order to obtain information and access to Plaintiff's Airbnb account and to convert that account, and proceeds deriving therefrom, to her own.

80.     Defendant's actions violated 18 U.S.C. § 1030(a)(4) because she accessed the Devices without authorization knowingly and with the intent to defraud Plaintiff of the rental value of the Property.

81.     Defendant's actions violated 18 U.S.C. § 1030(a)(5)(A) because she knowingly, intentionally, and without authorization accessed the Devices and transmitted a program, information, code, or command and caused damage to Plaintiff and irreparable damage to Plaintiff's work laptop computer and upon belief one or more of his desktop computers.

82.     Alternative to the paragraph immediately preceding, Defendant's actions violated 18 U.S.C. § 1030(a)(5)(B) and (C) because she intentionally accessed the Devices without authorization and, as a result of such conduct, recklessly caused damage to Plaintiff and irreparable damage to Plaintiff's work laptop and upon belief one or more of his desktop computers.

83.     Plaintiff has suffered a monetary loss of at least $5,000.00 in aggregate value.

4822-0315-0054.v1

**Exhibit 1
Motion to Amend**

84.     Plaintiff has also suffered costs of responding to Defendant's offense including without limitation: conducting a damage assessment; attempting to restore data, program, system, or information to its condition prior to her offense; and loss of revenues from interruption caused by her offense.

85.     WHEREFORE, Plaintiff respectfully requests the Court to enter a judgment in his favor and against Defendant and award Plaintiff the following relief under  18 USC § 1030(g): i) an award of all compensatory and consequential damages in an amount to be proved at trial, including but not limited to recovery of the full amount of computer consultant fees expended for the purpose of determining whether Plaintiff's computer had been compromised, resources expended in fixing any problems caused by the unauthorized access, loss of business, loss of expected revenues, and loss of business goodwill costs suffered as a result of the unauthorized access; ii) an injunction preventing Defendant from using any computer from illegally accessing the Accounts or any other online account of Plaintiff; iii) for all prejudgment and post-judgment interest, statutory or monetary, as allowed by law, including but not limited to C.R.S. § 5-12-102; and iv) such other and further relief as this Court deems just and proper under the circumstances.

## COUNT II – IMMEDIATE INJUNCTIVE RELIEF

86.     Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

87.     Pursuant to Federal Rule of Civil Procedure P. 65(b), entitled (b) Temporary Restraining Order ("**TRO**"):

> (1)     Issuing Without Notice. The court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if: (A) specific facts in an affidavit or a verified complaint clearly show that immediate and

4822-0315-0054.v1

Exhibit 1
Motion to Amend

irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

88.     A TRO "is designed to preserve the status quo until there is an opportunity to hold a hearing on the application for a preliminary injunction and may be issued with or without notice to the adverse party." *Charles Alan Wright, et al*., 11A Fed. Prac. & Proc. Civ. § 2951 (3d ed. Apr. 2014 update).

89.     A party seeking a temporary restraining order or preliminary injunction must show: (1) that the movant has a substantial likelihood of eventual success on the merits; (2) that the movant will suffer imminent and irreparable injury unless the injunction issues; (3) that the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) that the injunction, if issued, would not be adverse to the public interest. *See, e.g., Diné Citizens Against Ruining Our Environment v. Jewell*, 839 F.3d 1276, 1281 (10th Cir. 2016); *Salba Corp., N.A. v. X Factor Holdings, LLC,* No. 12-CV-01306-REB-KLM, 2014 WL 128147 (D. Colo. Jan. 14, 2014).

90.     "[S]imple economic loss usually does not, in and of itself, constitute irreparable harm; such losses are compensable by monetary damages." *Heidman v. S. Salt Lake City,* 348 F.3d 1182, 1189 (10th Cir. 2003).

91.     Plaintiff is entitled to immediate temporary and injunctive relief because:

A.     Plaintiff can show he has a substantial likelihood of success under his CFAA claim, his theft claim, his conversion claim, his appropriation claim and his claim for intentional infliction of emotional distress against Defendant because her illegal actions of accessing Plaintiff's Devices and his Accounts and attempting to access Plaintiff's Ring Account are documented and traceable through email communications and computer

Exhibit 1
Motion to Amend

metadata, and Plaintiff can establish he has incurred damages of over $5,000 as a result of her actions.

B.      Plaintiff can also establish that Defendant tampered with his mail; stole his jewelry, including his Apple Watch and his graduation ring totaling approximately $700.00, his $10,000.00 Sleep Number Bed, his $1,500.00 LG 60-inch TV with TV mount; his $350.00 road bike (worth $2,500.00 to $3,000.00 new); his $600.00 set of dumbbell weights and weight plates; his $300.00 luggage set; his $250.00 dog crates, dog collars for walking and dog training collars totaling $250.00; his $75.00 portable Bluetooth charger; and his $120.00 Ring doorbell security camera. Plaintiff has proof that he made substantial payments towards these stolen items, and that these items were at the Property when Plaintiff last had physical possession of the Property in August 2020.

C.      In addition, Plaintiff can also establish that Defendant took all his legal documents including his Social Security Card, his passport, and his immigration papers. Plaintiff kept these important documents in a particular cabinet in his home office, Defendant knew where they were, and these documents were no longer at the Property when Plaintiff regained access to the Property on April 1, 2021.

D.      Plaintiff will suffer immediate and irreparable injury if Defendant is not refrained from accessing Plaintiff's Accounts by using his stolen identifying information or otherwise. Also, if Defendant is not required to return Plaintiff's stolen items, and is not enjoined from using his personal identifying information for illegal purposes, Plaintiff is concerned that Defendant may continue to use his personal identifying information to unlawfully access other of Plaintiff's online accounts, and that Defendant will use Plaintiff's identity to run up his credit and cause him financial ruin. Plaintiff is also concerned that Defendant may illegally sell his information for a profit or use it for other illicit means.

E.      The damage that may caused to Plaintiff if an immediate injunction does not issue outweighs any potential damage to Defendant because Defendant has no legal ownership right in the Devices or the Account, or Plaintiff's personal identifying information or documentation; and

F.      The injunction is not adverse to public interest but promotes the standards set forth under Plaintiff's claims to act within the bounds of the law even when using electronic means.

4822-0315-0054.v1

Exhibit 1
Motion to Amend

92.     Plaintiff filed a Motion for Temporary Restraining Order and Preliminary Injunction, and a Reply thereto, which set forth the above allegations in detail and are supported y affidavit.

93.     Plaintiff respectfully requests this Court immediately grant him a temporary restraining order to i) enjoin Defendant from using his personal identifying information to gain access to his Accounts and to otherwise prevent Defendant from using, copying or selling Plaintiff's personal identifying information for improper means; ii) require that Defendant return Plaintiff's mail and legal documents, including his Social Security Card, his passport, his immigration papers and any other of Plaintiff's legal documents at the Property, and all copies thereof; iii) require that Defendant return all other stolen items from the Property immediately to ensure such items are not sold and later unrecoverable; and iv) enjoin Defendant from converting any monetary proceeds resulting from her improper actions of renting the Property and diverting monies from Plaintiff's bank account to her own.

94.     Plaintiff also respectfully requests the Court set a preliminary injunction hearing within fourteen (14) days, and thereafter, preliminarily enjoin Defendant from such future activity.

## COUNT III - PERMANENT INJUNCTIVE RELIEF

95.     Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

96.     The purpose of preliminary injunctive relief is to preserve the relative positions of the parties until a trial on the merits can be held. *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1258 (10th Cir. 2005). Plaintiff's right to relief must be clear and unequivocal. *Id.*

4822-0315-0054.v1

Exhibit 1
Motion to Amend

97.     A party seeking permanent injunctive relief must establish: (1) substantial likelihood that the movant will eventually prevail on the merits; (2) a showing that movant will suffer irreparable injury unless the injunction issues; (3) proof that the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) a showing that the injunction, if issued, would not be adverse to the public interest. *Lundgrin v. Claytor*, 619 F.2d 61, 63 (10th Cir. 1980); *Mantle Ranches v. United States Park Serv.*, 945 F. Supp. 1449, 1452 (D. Colo. 1996).

98.     Plaintiff is entitled to permanent injunctive relief because:

A.      Plaintiff can show he has a substantial likelihood of success under his CFAA claim, his theft claim, his conversion claim, his appropriation claim and his claim for intentional infliction of emotional distress against Defendant because her illegal actions of accessing Plaintiff's Devices and his Accounts and attempting to access Plaintiff's Ring Account are documented and traceable through email communications and computer metadata, and Plaintiff can establish he has incurred damages of over $5,000 as a result of her actions.

B.      Plaintiff can also establish that Defendant tampered with his mail; stole his jewelry, including his Apple Watch and his graduation ring totaling approximately $700.00, his $10,000.00 Sleep Number Bed, his $1,500.00 LG 60-inch TV with TV mount; his $350.00 road bike (worth $2,500.00-$3,000.00 new); his $600.00 set of dumbbell weights and weight plates; his $300.00 luggage set; his $250.00 dog crates, dog collars for walking and dog training collars totaling $250.00; his $75.00 portable Bluetooth charger; and his $120.00 Ring doorbell security camera. Plaintiff has proof that he made substantial payments towards these stolen items, and that these items were at the Property when Plaintiff last had physical possession of the Property in August 2020.

C.      In addition, Plaintiff can also establish that Defendant took all his legal documents including his Social Security Card, his passport, and his immigration papers.  Plaintiff kept these important documents in a particular cabinet in his home office, Defendant knew where they were, and these documents were no longer at the Property when Plaintiff regained access to the Property on April 1, 2021.

4822-0315-0054.v1

Exhibit 1
Motion to Amend

D.  Plaintiff will suffer immediate and irreparable injury if Defendant is not refrained from accessing Plaintiff's Accounts by using his stolen identifying information or otherwise. Also, if Defendant is not required to return Plaintiff's stolen items, and is not enjoined from using his personal identifying information for illegal purposes, Plaintiff is concerned that Defendant may continue to use his personal identifying information to unlawfully access other of Plaintiff's online accounts, and that Defendant will use Plaintiff's identity to run up his credit and cause him financial ruin. Plaintiff is also concerned that Defendant may illegally sell his information for a profit or use it for other illicit means.

E.  The damage that may caused to Plaintiff if an immediate injunction does not issue outweighs any potential damage to Defendant because Defendant has no legal ownership right in the Devices or the Account, or Plaintiff's personal identifying information or documentation; and

F.  The injunction is not adverse to public interest but promotes the standards set forth under Plaintiff's claims to act within the bounds of the law even when using electronic means.

99.  Plaintiff is thus entitled to have this Court i) enjoin Defendant from using his personal identifying information to gain access to his Accounts and to otherwise prevent Defendant from using, copying or selling Plaintiff's personal identifying information for improper means; ii) require that Defendant return Plaintiff's mail and legal documents, including his Social Security Card, his passport, his immigration papers and any other legal documents of Plaintiff located at the Property, and all copies thereof; iii) require that Defendant return all other stolen items from the Property immediately to ensure such items are not sold and later unrecoverable; and iv) enjoin Defendant from converting any monetary proceeds resulting from her improper actions of renting the Property and diverting monies from Plaintiff's bank account to her own.

100.  Plaintiff requests this Court grant him a hearing to determine whether to put in place a permanent injunction, forever enjoining Defendant from such future conduct.

4822-0315-0054.v1

Exhibit 1
Motion to Amend

## COUNT IV – CONVERSION

101.     Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

102.     Plaintiff is, and at all times pertinent to this cause was, entitled to the possession of the following (the "**Stolen Items**"):

A. Rental proceeds derived from the Property;
B. Plaintiff's mail;
C. Plaintiff's jewelry, including his Apple Watch and his graduation ring totaling approximately $700.00;
D. Plaintiff's $10,000.00 Sleep Number Bed;
E. Plaintiff's $1,500.00 LG 60-inch TV with TV mount;
F. Plaintiff's $350.00 road bike (worth $2,500.00-$3,000.00 new);
G. Plaintiff's $600.00 set of dumbbell weights and weight plates;
H. Plaintiff's $300.00 luggage set;
I. Plaintiff's $250.00 dog crates, dog collars for walking and dog training collars totaling $250.00;
J. Plaintiff's $75.00 portable Bluetooth charger;
K. Plaintiff's $120.00 Ring doorbell security camera;
L. Plaintiff's Social Security Card;
M. Plaintiff's Passport;
N. Plaintiff's Immigration papers;
O. Copies of Plaintiff's Closing documents from the purchase of the Property

103.     These items were at Plaintiff's Property at the time they were stolen.

104.     Between August 2020 and April 1, 2021, Defendant converted the Stolen Items to her own use, which were the property of Plaintiff.

105.     Specifically, by ownership of the Property in fee simple, Plaintiff has a possessory interest in the rental proceeds derived from the Property. Also, Plaintiff paid for the Stolen Items or otherwise had proper legal ownership or possession over these items.

4822-0315-0054.v1

Exhibit 1
Motion to Amend

106.   By taking the Stolen Items and accessing Plaintiff's Devices and Accounts without authorization and changing Plaintiff's Airbnb account into her own, Defendant took distinct and unauthorized action of dominion or control over Plaintiff's interests.

107.   On April 2, 2021, Plaintiff demanded the return of the Stolen Items.

108.   Defendant failed to return the Stolen Items to Plaintiff and continues to refuse to return them. A copy of Plaintiff's written demand asking Defendant to return the Stolen Items is attached to this FAC as **Exhibit 7**.

109.   As a result of this failure, Plaintiff has and will continue to suffer losses and damage. In particular, Defendant rented out the Property via Airbnb's website and collected rental income in an amount to be determined at trial.

110.   In addition, Defendant's actions also caused Plaintiff to lose about $6,000.00 in bookings that had been arranged prior to August 21, 2020, but were cancelled because of Defendant's intentional act of changing the keypad passcode.

111.   Further, Defendant's actions have caused a loss to Plaintiff related to future bookings in an amount to be determined at trial.

112.   WHEREFORE, Plaintiff respectfully requests the Court to enter a judgment in his favor and against Defendant and claims the following damages: i) an award of all compensatory and consequential damages in an amount to be proved at trial; ii) costs of this action; iii) reasonable attorney fees; iv) all prejudgment and post-judgment interest, statutory or monetary, as allowed by law, including but not limited to C.R.S. § 5-12-102; v) pursuant to C.R.S. § 18–4–405, two hundred dollars or three times the amount of the actual damages, whichever is greater; and vi) such other and further relief as this Court deems just and proper under the circumstances.

4822-0315-0054.v1

Exhibit 1
Motion to Amend

## COUNT VI - CIVIL THEFT

113.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

114.    By ownership of the Property in fee simple, Plaintiff has a possessory interest in the rental proceeds derived from the Property.

115.    By accessing Plaintiff's Devices and Accounts without authorization and changing Plaintiff's Airbnb account into her own, Defendant took distinct and unauthorized action of dominion or control over Plaintiff's interest. Defendant has also taken the Stolen Items.

116.    Defendant intends to deprive Plaintiff of his interests permanently.

117.    Defendant's actions have damaged Plaintiff. Defendant has been forced to incur additional costs to replace certain of the stolen items. Also, Defendant has already used Plaintiff's personal identifying information to illegally gain access to Plaintiff's Accounts and convert his Airbnb proceeds to her bank account, in an amount to be determined at trial.

118.    In addition, Defendant's actions also caused Plaintiff to lose about $6,000.00 in bookings that had been arranged prior to August 21, 2020, but were cancelled because of Defendant's intentional act of changing the keypad passcode.

119.    Further, Defendant's actions have caused a loss to Plaintiff related to future bookings in an amount to be determined at trial.

120.    WHEREFORE, Plaintiff respectfully requests the Court to enter a judgment in his favor and against Defendant and claims the following damages: i) an award of all compensatory and consequential damages in an amount to be proved at trial; ii) costs of this action; iii) reasonable attorney fees; iv) all prejudgment and post-judgment interest, statutory or monetary, as allowed by

4822-0315-0054.v1

Exhibit 1
Motion to Amend

law, including but not limited to C.R.S. § 5-12-102; v) pursuant to C.R.S. § 18–4–405, two hundred dollars or three times the amount of the actual damages, whichever is greater; and vi) such other and further relief as this Court deems just and proper under the circumstances.

## COUNT VII - APPROPRIATION

121.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

122.    Plaintiff and Defendant dated on and off for 5 years.

123.    Plaintiff purchased the Property.

124.    Plaintiff kept his legal documents in a cabinet in his home office at the Property, including his passport, his Social Security Card, his citizenship documents, and his closing documents for the Property ("**Legal Documents**").

125.    Defendant knew where Plaintiff kept his Legal Documents.

126.    Plaintiff regularly received mail at the Property.

127.    Plaintiff subscribes to the United States Postal Service's daily "Informed Delivery" emails, which emails provide him with pictures of his mail coming to the Property.

128.    Between August 2020 and February 2021, Defendant had unfettered access to Plaintiff's mail, to the exclusion of Plaintiff.

129.     Plaintiff never provided Defendant written or oral consent to access or use his Legal Documents.

130.    Plaintiff never gave Defendant permission to collect or open his mail.

131.    Defendant used Plaintiff's name or likeness for Defendant's own purpose or benefit in the following ways:

Exhibit 1
Motion to Amend

a. **Airbnb Account:**

   i. On August 21, 2020, Defendant, without Plaintiff's knowledge or permission, used Plaintiff's name or likeness to access Plaintiff's Airbnb account, and completely changed all the personal information on Plaintiff's Airbnb account, including the payout method on Plaintiff's Airbnb account, to gain access to and convert any and all proceeds being generated from the Airbnb rental.

   ii. On August 22, 2020, Defendant, without Plaintiff's knowledge or permission, used Plaintiff's name or likeness to access Plaintiff's Airbnb account, and canceled a personal trip that Plaintiff had booked on his Airbnb account, and initiated a refund to attempt to collect the money that Plaintiff had paid towards the trip.

   iii. On or about March 5, 2021, Defendant, without Plaintiff's knowledge or permission, used Plaintiff's name or likeness, and upon belief his mail and/or stolen identification, to try to regain access to Plaintiff's Airbnb account and the Airbnb platform convert additional proceeds.

b. **Ring Account**

   i. On or about April 10, 2021, Defendant, without Plaintiff's knowledge or permission, used Plaintiff's name or likeness, and upon belief Plaintiff's mail and/or stolen identification, to access Plaintiff's Ring account.

132.    During the February 2, 2021 Civil Assist, Plaintiff discovered Defendant had hidden his mail in a drawer underneath her belongings. Based on this activity, Defendant has reason to believe Defendant has taken Plaintiff's mail that had been delivered to the Property between August 2020 and February 2021, and has used personal identifying information in that mail to improperly access Plaintiff's Accounts in his name or likeness.

133.    On January 14, 2021, Plaintiff demanded that Defendant immediately shut down her Airbnb account associated with the Property, and relinquish to Plaintiff any and all proceeds Defendant illegally converted to her account by using his likeness since August 19, 2020.

134.    On March 23, 2021, Plaintiff demanded that Defendant refrain from taking any of Plaintiff's Legal Documents or mail when vacating the property.

25

Exhibit 1
Motion to Amend

135.    On April 2, 2021, Plaintiff demanded that Defendant immediately return the stolen Legal Documents.

136.    To date, Defendant has not responded to any of these demands.

137.    At all times mentioned here and up to and including the present time, Plaintiff had a reasonable expectation of privacy in Plaintiff's personal and private information described above, including his mail and his Legal Documents.

138.    The use of Plaintiff's name or likeness was for Defendant's own purposes or benefit, in order to gain access to Plaintiff's Accounts and derive profit or benefit therefrom.

139.    The conduct of Defendant, in using Plaintiff's personal and private information as described herein, constituted a serious invasion of Plaintiff's right to privacy and such an egregious breach of social norms that Plaintiff was, as a result, subjected to extreme emotional distress and torment.

140.    As a proximate result of the conduct of Defendant, Plaintiff has suffered emotional distress, mental suffering, and invasion of Plaintiff's Constitutional right to privacy.

141.    The acts of Defendant were willful, wanton, and malicious and justify the awarding of exemplary and punitive damages.

142.    WHEREFORE, Plaintiff requests that this Court enter a judgment in Plaintiff's favor and against Defendant, and award to Plaintiff: i) actual damages, in an amount to be proved at trial; ii) treble damages, in an amount to be proved at trial; iii) any consequential damages resulting in the illegal use of sale of Plaintiff's Legal Documents; iv) Costs of this action; v) Reasonable attorney fees; vii) Pre-judgment and post-judgment interest on any award of damages; and viii) such other and further relief as this Court deems just and equitable.

4822-0315-0054.v1

Exhibit 1
Motion to Amend

143.    Plaintiff also intends to amend the FAC to bring a claim for exemplary damages under Count VII, which is allowed only after the exchange of initial disclosures pursuant to Rule 26 of the Colorado Rules of Civil Procedure.

## **COUNT VIII – INENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

144.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

145.    As stated above, between August 2020 and April 2021, Defendant committed the following acts of extreme and outrageous conduct:

A. Illegally using Plaintiff's Devices and accessing Plaintiff's Accounts;
B. Illegally accessing Plaintiff's Facebook account in his name or likeness to change Plaintiff's status from single to married;
C. Illegally accessing Plaintiff's Airbnb account in his name or likeness to divert his Airbnb proceeds to her bank account;
D. Preventing Plaintiff from accessing his Airbnb account;
E. Causing Airbnb to shut down Plaintiff's account and preventing him from renting the Property on Airbnb;
F. Preventing Plaintiff from accessing the Property for nine months, even though Plaintiff owned legal title to the Property and paid the full amount of the mortgage, taxes and utilities on the Property during all relevant times;
G. Illegally accessing Plaintiff's Ring account in his name or likeness;
H. Changing the keypad codes to Plaintiff's Property;
I. Canceling a personal trip that Plaintiff had booked on his Airbnb account, and initiating a refund to attempt to collect the money that Plaintiff had paid towards the trip.
J. Upon belief using Plaintiff's Legal Documents to try to regain access to Plaintiff's Accounts;
K. Hiding and upon belief stealing Plaintiff's mail while he was unable to access his Property;
L. Denying Plaintiff access to his car from August 24, 2020 to February 2, 2012, without any legal basis to do so;
M. Placing Plaintiff's dogs in an animal shelter, and causing Plaintiff to incur boarding fees of $2,000 a month, from September 2020 to April 2021;
N. Stealing Plaintiff's Legal Documents, including his passport, his Social Security Card and his immigration papers and refusing to return them;
O. Causing significant damage to the Property; and
P. Taking the Stolen Items from the Property and refusing to return them.

4822-0315-0054.v1

Exhibit 1
Motion to Amend

146.    The conduct of Defendant was extreme and outrageous, particularly where Defendant committed most of these acts while Plaintiff was prevented from having full access to the Property.

147.    Defendant acted recklessly or with the intent of causing Plaintiff severe emotional distress.

148.    Defendant's conduct did cause Plaintiff severe emotional distress, and did cause Plaintiff to suffer injuries and damages, including: mental distress and emotional anxiety, depression, and outpatient treatment and therapies, which have impaired Plaintiff in his ability to perform his demanding job of Chief Operating Officer with Pike Reporting and Great Plains Reporting, causing loss of revenue, as he has a pivotal impact on the sales and operations of the company. Due to the emotional distress Defendant caused Plaintiff, Plaintiff has lost time at work, visiting his general practitioner monthly. Plaintiff also sees a therapist weekly, sometimes during the work week. These actions stand to jeopardize Plaintiff's job, causing further distress to Plaintiff.

149.    WHEREFORE, Plaintiff requests that this Court enter judgment in Plaintiff's favor and against Defendant, and award to Plaintiff: i) such actual damages as this Court may deem just and proper; ii) costs of this action; iii) reasonable attorney fees; iv) expert witness fees; v) pre-judgment and post-judgment interest on any award of damages to the extent permitted by law; and vi) such other and further relief as this Court may deem appropriate.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment in favor of Plaintiff and against Defendants upon each claim for relief asserted herein, and that this Court:

4822-0315-0054.v1

Exhibit 1
Motion to Amend

1.      Award Plaintiff a money judgment against Defendant under Counts I, IV, V, VI, VII and VIII, in an amount to be determined at trial;

2.      Issue a temporary restraining order (without hearing), preliminary injunction, and permanent injunction (upon hearing): i) enjoining Defendant from using Plaintiff's personal identifying information to gain access to his Accounts and to otherwise prevent Defendant from using, copying or selling Plaintiff's personal identifying information for improper means; ii) ordering that Defendant return Plaintiff's mail and Legal Documents, including his Social Security Card, his passport, his immigration papers and any other of Plaintiff's legal documents located at the Property, and all copies thereof; iii) ordering that Defendant return all other Stolen Items from the Property immediately to ensure such items are not sold and later unrecoverable; and iv) enjoining Defendant from converting any monetary proceeds resulting from her improper actions of renting the Property and diverting monies from Plaintiff's bank account to her own.

3.      Award Plaintiff treble damages pursuant to C.R.S. § 18–4–405 under I, IV, V, VI, VII and VIII;

4.      Award Plaintiff his costs and reasonable attorneys' fees;

5.      Award Plaintiff pre and post-judgment interest statutory or monetary, as allowed by law, including but not limited to C.R.S. § 5-12-102; and

6.      Grant such other and further relief as the Court deems just and proper.

Respectfully submitted this 16th day of April 2021.

*/s/Victoria Edwards*
Victoria Edwards, #39838
Jackson Kelly, PLLC
1099 18th Street, Suite 2150
Denver, CO 80202
Victoria.edwards@jacksonkelly.com
*ATTORNEY FOR PLAINTIFF*

4822-0315-0054.v1

**Exhibit 1**
**Motion to Amend**

## Verification

I, Jory Cass, declare as follows:

1.     I am Plaintiff in the present case, a citizen of the United States of America, and a resident of the State of Colorado.

2.     I have personal knowledge of myself, my activities, and my intentions, including those set out in the foregoing *FIRST AMENDED VERIFIED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF;* and if called on to testify I would competently testify as to the matters stated herein.

3.     I have personal knowledge of Ms. Enciso's actions, including those set out in the foregoing *FIRST AMENDED VERIFIED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF,* and if called on to testify I would competently testify as to the matters stated herein.

4.     I verify under penalty of perjury under the laws of the United States of America and Colorado that the factual statements in this *FIRST AMENDED VERIFIED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF* concerning myself, my activities, and my intentions are true and correct, as are the factual statements concerning Ms. Enciso's actions.

Jory Cass

STATE OF COLORADO     )
                        ) ss.
COUNTY OF Denver    )

Subscribed and sworn to before me by Jory Cass remotely, this 16th day of April, 2021 using audio visual technology.

*Tamara Harris*

Notary Public

[SEAL]

My commission expires: 8/20/2021

TAMARA HARRIS
NOTARY PUBLIC
STATE OF COLORADO
NOTARY ID 20094025340
MY COMMISSION EXPIRES 08/20/2021

4834-7114-4166.v1

Exhibit 1
Motion to Amend

## <u>CERTIFICATE OF SERVICE</u>

   I hereby certify that on April 16, 2021, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system on the following parties:

Jeffrey M. Villanueva
Zachary M. Graupmann
Jeffrey M. Villanueva, P.C.
1755 Blake Street, Suite 225
Denver, Colorado 80202
jeff@jmvpclaw.com
zac@jmvpclaw.com

*Attorneys for Defendant Evelyn Enciso*

Jacqueline V. Roeder
Tess Hand-Bender
DAVIS GRAHAM & STUBBS LLP
1550 17th Street, Suite 500
Denver, Colorado, 80202

*Attorneys for Defendant Airbnb, Inc.*

             */s/ Tammy Harris*    
             Tammy Harris

4822-0315-0054.v1

Exhibit 1
Motion to Amend