| | |
|---|---|
| **DISTRICT COURT, JEFFERSON COUNTY, COLORADO**<br><br>Court Address:  100 Jefferson County Parkway<br>                        Golden, Colorado 80401<br><br>**Plaintiff:**     **EVELYN ENCISO**<br><br>v.<br><br>**Defendant:**   **JORY CASS**<br><br>Attorney for Plaintiff<br>Jeffrey M. Villanueva, P.C.<br>Jeffrey M. Villanueva, Esq.       Atty. Reg. No.: #10001<br>Zachary M. Graupmann, Esq.    Atty. Reg. No.: #53478<br>1755 Blake Street, Suite 225<br>Denver, Colorado 80202<br>Telephone: 303-295-7525     E-mail: jeff@jmvpclaw.com<br>Facsimile: 303-295-7511      E-mail: zac@jmvpclaw.com | ▲ **COURT USE ONLY** ▲<br><br>Case No.: **21CV030057**<br>Division: **9**<br>Courtroom: **5F** |
| **COMPLAINT AND JURY DEMAND** | |

Plaintiff Evelyn Enciso, by her attorney, Jeffrey M. Villanueva, P.C., for her Complaint states:

### I. Parties

1.  Plaintiff, Evelyn Enciso ("Ms. Enciso"), currently resides at 7583 Lamar Ct., Arvada, Colorado 80421-0942 (the "shared Colorado residence").

2.  Defendant, Jory Cass ("Mr. Cass"), currently resides in Jefferson County, Colorado.

### II. Venue

3.  Venue is proper in Jefferson County because Mr. Cass resides in Arvada, and because this is an action affecting title to real property located in Jefferson County.

### III. General allegations

4.  Mr. Cass and Ms. Enciso, together ("the Parties") began a romantic relationship in March 2015.  The relationship ended in July 2020.

5.  Ms. Enciso wore a promise ring for a portion of the relationship between the Parties as

**EXHIBIT 1**

Mr. Cass had indicated he intended to propose marriage.

6.  At various times throughout the relationship, Mr. Cass referred to Ms. Enciso as his "wife."

7 .  Ms. Enciso is a legal immigrant from Peru who has resided in the United States for approximately ten (10) years.

8.  Ms. Enciso's formal education is two (2) years of culinary school in Peru.  Based upon how  Mr. Cass treated her she believed that the parties actually had a common law marriage.

9.  Mr. Cass is from the United States and has a bachelor's degree in criminal justice.  Mr. Cass has previously worked as a court reporter and is familiar with the United States legal system.

10.  Throughout the course of the relationship, Mr. Cass has always handled all the finances.

11.  Ms. Enciso routinely either gave or sent her paychecks to Mr. Cass to handle bills and expenses.

12.  The parties have no joint bank accounts and maintain two joint credit cards.

13.  Mr. Cass maintains his own credit card.

14.  Ms. Enciso was unable to spend her earned money as she wished due to Mr. Cass's assuming control over the finances.

15.  Throughout the relationship, Mr. Cass repeatedly reassured Ms. Enciso that he "would take care of her."

16.  In 2016, the parties bought a house together in Florida.  Collectively, the parties put down $25,000 for the Florida residence.  Ms. Enciso put down approximately $10,000-12,000 toward the down payment.  The home was titled in both parties' names.  Both parties contributed to the increase in the property value through various improvements.  The parties had a de facto partnership

17.  In 2015, Ms. Enciso sent $20,000 to her family in Peru prior to entering into the relationship.  Mr. Cass pressured Ms. Enciso to have her family return the money.  Ms. Enciso's family returned the money and this money was used to pay for improvements, furniture and appliances for the shared Florida residence.

18.  Mr. Cass has admitted that Ms. Enciso is owed at least $20,000, which refers to this separate property component.

19.  In January 2019, Mr. Cass insisted Ms. Enciso sign a quitclaim deed to the shared

**EXHIBIT 1**

Florida residence. At that time, the parties had no intention to sell the Florida residence. Mr. Cass did not tell or allow Ms. Enciso to seek independent counsel because Mr. Cass frequently reassured her the house was still "their home" and that he "would take care of her."

20. Ms. Enciso trusted her romantic partner and did not understand the significance of such a document. Ms. Enciso received nothing in return.

21. In June 2019, Mr. Cass sold the Florida residence and collected approximately $85,000 in net proceeds. These proceeds were the primary source of the down payment used to purchase the shared Colorado residence in July 2019. Mr. Cass added $10,000 to contribute to the down payment through a gift and through an IRA account in his name. Ms. Enciso understood from Mr. Cass that the shared Colorado residence was intended to be owned by the Parties jointly.

22. The shared Colorado residence was titled only in Mr. Cass's name despite the net proceeds from the sale of the shared Florida residence approximating the primary source for the down payment.

23. The Parties have routinely rented available rooms within the shared Colorado residence to guests using the Airbnb platform. Both Mr. Cass and Ms. Enciso acted as hosts for the guests renting. Ms. Enciso often cooked breakfasts, lunches, or dinners for the guests staying in the shared Colorado residence.

24. On December 20, 2019, the Parties purchased a 2020 Tesla Model 3. The Tesla was titled in Mr. Cass's name only.

25. Ms. Enciso contributed approximately $5,000 toward the purchase of the 2020 Tesla Model 3.

26. In July 2020, Ms. Enciso's father passed away in Peru due to the novel Coronavirus. Mr. Cass was not supportive during this time and Ms. Enciso travelled to California for two weeks. Upon her return, Ms. Enciso ended the romantic relationship.

27. In July 2020, Mr. Cass called the police after an altercation which included Ms. Enciso. However, Mr. Cass was arrested and charged with domestic violence and a mandatory protection order was put in place to protect Ms. Enciso. Mr. Cass assaulted Ms. Enciso, left bruises on her arms and broke her mobile phone.

28. Due to educational and cultural differences between Mr. Cass and Ms. Enciso, Mr. Cass has repeatedly exploited his influence and power over Ms. Enciso and the relationship to create disproportionate power structure in the relationship.

29. Mr. Cass created a financial dependency and exploited the educational differences between the Parties to manipulate and exert control over both the relationship and Ms. Enciso.

30. Mr. Cass has now repudiated his agreements with and promises to Ms. Enciso. He

**EXHIBIT 1**

denies that she has any interest in either the proceeds used to purchase the shared CO residence or the shared CO residence and has threatened to evict her.

31. A notice to quit was served upon Ms. Enciso on December 9, 2020.

## IV. FIRST CLAIM FOR RELIEF
### (BREACH OF FIDUCIARY DUTY)

32. Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 31 as if fully set forth herein.

33. The educational and cultural differences between Mr. Cass and Ms. Enciso helped create a disproportionate power structure in the relationship.

34. Mr. Cass's repeated reassurances that he "would take care of her" coupled with Ms. Enciso's very limited knowledge regarding United States law led Ms. Enciso to agree to sign a quitclaim deed to the shared Florida residence with the understanding the shared residence was still owned by both parties. Ms. Enciso was not advised to consult independent counsel when she signed the quitclaim deed and did not understand the legal significance of the document.

35. Mr. Cass deliberately caused Ms. Enciso to become increasingly dependent upon him and exercised increasing control over her financially and emotionally.

36. One way that he exercised control over Ms. Enciso was that he always handled the finances. Ms. Enciso has routinely sent or given her paychecks to Mr. Cass to handle bills and expenses. The parties never maintained a joint bank account and Ms. Enciso never maintained a separate credit card. Ms. Enciso was unable to spend her earned money as she wished due to Mr. Cass's assumption of control over the finances.

37. Ms. Enciso trusted Mr. Cass, as the person who handled all her finances and was her romantic partner, to act in her best interests with respect to her finances.

38. Mr. Cass acted as a fiduciary to Ms. Enciso.

39. In assuming control over Ms. Enciso's financial affairs and reassuring Ms. Enciso that the shared Florida residence was "their home", Mr. Cass, due to the obvious conflict of interest, had a duty to disclose the conflict of interest and transact at arms-length by advising Ms. Enciso to consult independent counsel with regard to the quitclaim deed. Further, Mr. Cass had a duty disclose any conflicts of interest in handling Ms. Enciso's financial affairs.

40. Mr. Cass breached his fiduciary duties by overlooking his duty of honesty, candor, intellectual honesty and impartiality in handling Ms. Enciso's finances by acting for his own personal gain and advantage.

41. Mr. Cass's breaches of fiduciary duty include but are not limited to: failing to advise her as to the conflict between his and her interests, failing to refer her out for independent advice,

**EXHIBIT 1**

failing to account for his actions, and failure to honor his promises and agreements.

42. Ms. Enciso has suffered injuries, damages and losses which were caused by the breach of fiduciary duties by Mr. Cass.

## V. SECOND CLAIM FOR RELIEF
### (BREACH OF PARTNERSHIP AGREEMENT)

43. Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 42 as if fully set forth herein.

44. The Parties' partnership included an agreement to own the Florida property together, to make improvements to it and to sell it for a profit, which they did.  It also included rolling over those profits into the shared Colorado residence.

45. The Parties' partnership also included an agreement to jointly run an Airbnb out of the shared Colorado residence for profit.

46. Mr. Cass breached the general partnership agreement by filing an unlawful detainer action to evict Ms. Enciso and serving her with a notice to quit.

47. Ms. Enciso suffered injuries, damages and losses as a direct result of these breaches.

## VI. FOURTH CLAIM FOR RELIEF
### (BREACH OF IMPLIED CONTRACT)

48. Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 47 as if fully set forth herein.

49. During the course of the parties' relationship Mr. Cass assumed control of Ms. Enciso's finances. He made promises that he "would always take care of her."  The Parties bought the shared Florida residence together and both worked to improve the shared Florida residence to raise its value.

50. Mr. Cass promised the shared Florida residence would always be "their home" but insisted Ms. Enciso sign a quitclaim deed without independent counsel.  The Parties sold the shared Florida residence and received $85,000 in net proceeds, which was used as the down payment for the shared CO residence.  Mr. Cass repeatedly reassured Ms. Enciso that this was "their home", but he titled the property in his name only.

51. Mr. Cass materially breached these promises.

52. Ms. Enciso suffered damages, injuries and loss as a result of the breaches and seeks the reasonable value of her services, her share in the Florida residence proceeds, and repayment of her separate property component.

**EXHIBIT 1**

## VII. Fifth Claim for Relief
### (Promissory Estoppel)

53. Plaintiff incorporates by reference the allegations in paragraphs 1 through 52 as if fully set forth herein.

54. Mr. Cass repeatedly promised Ms. Enciso that she had an ownership interest in the shared Florida residence even after Ms. Enciso signed the quitclaim deed. Mr. Cass promised he would always take care of her financially and assumed control of her finances.

55. Mr. Cass knew that Ms. Enciso was devoting time, making expenditures and changing her life for him in reliance on his promises. Mr. Cass continually induced Ms. Enciso to expend time and money in furtherance of his promises.

56. Ms. Enciso's reasonable and detrimental reliance upon Mr. Cass's promises has caused her injuries, damages and losses.

## VIII. Sixth Claim For Relief
### (Declaratory Judgment)

57. Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 56 as if fully set forth herein.

58. There is a dispute between the parties concerning Ms. Enciso's ownership interest in the shared Colorado residence.

59. Pursuant to the promises and/or agreements between the Parties, and by virtue of Ms. Enciso's substantial contributions, she is entitled to a declaratory judgment that she is the owner of an undivided one-half interest in the aforementioned property.

## IX. Seventh Claim for Relief
### (Unjust Enrichment)

60. Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 59 as if fully set forth herein.

61. Mr. Cass promised to repay Ms. Enciso's $20,000 contribution of her separate property used for residential upgrades, furniture and appliances. Mr. Cass further acknowledged that Ms. Encino was entitled to her share of the proceeds of the Florida home.

62. Mr. Cass promised to repay Ms. Enciso's $5,000 contribution of her separate property used to purchase the 2020 Tesla Model 3. The vehicle was subsequently titled in Mr. Cass's name only.

63. Mr. Cass has received valuable services and property from Ms. Enciso under circumstances such that it would be inequitable to not require him to pay for the same.

**EXHIBIT 1**

64. Mr. Cass has been unjustly enriched at the expense of Ms. Enciso.

### X. EIGHTH CLAIM FOR RELIEF
### (ASSAULT)

65. Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 64 as if fully set forth herein.

66. In July 2020, Mr. Cass intended to make physical contact with Ms. Enciso.

67. This intended physical contact placed Ms. Enciso in apprehension of immediate physical contact and the contact appeared harmful and offensive.

68. Ms. Enciso suffered damages, losses and injuries, including, but not limited to, physical and mental pain and suffering, inconvenience, emotional stress, fear, anxiety, embarrassment, humiliation, impairment of the quality of life.

### XI. NINTH CLAIM FOR RELIEF
### (BATTERY)

69. Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 68 as if fully set forth herein.

70. In July 2020, Mr. Cass physically attacked Ms. Enciso.

71. The physical contact caused injury and emotional distress to Ms. Enciso. Further this offensive contact offended Ms. Enciso's reasonable sense of personal dignity.

72. Mr. Cass intended and did make physical contact with Ms. Enciso. This physical contact was harmful and offensive.

73. Ms. Enciso suffered damages, losses and injuries, including, but not limited to, physical and mental pain and suffering, inconvenience, emotional stress, fear, anxiety, embarrassment, humiliation, impairment of the quality of life.

### XII. TENTH CLAIM FOR RELIEF
### (CONSTRUCTIVE TRUST)

74. Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 73 as if fully set forth herein.

75. Ms. Enciso has a one-half ownership interest in the shared Colorado residence due to her contributions and Mr. Cass's promises.

76. Ms. Enciso is entitled to trace her share of the proceeds from the shared Florida

**EXHIBIT 1**

residence to the shared Colorado residence.

77.  The romantic relationship between the Parties resulted in a confidential relationship between the Parties.

78.  Mr. Cass's wrongfully acquired Ms. Enciso's ownership interest by titling the shared Colorado residence in his name alone.

79.  Ms. Enciso's ownership interest allows this Court to establish a constructive trust as an equitable remedy.

**WHEREFORE**, Plaintiff prays this Court enter judgment for the Plaintiff and against the Defendant , in an amount to be determined at trial which will fully and fairly compensate Plaintiff for all of her damages, for declaratory relief, for a constructive trust, for prejudgment and post-judgment interest, costs, attorneys' fees, and such other and further relief as this Court deems just and proper.

PLAINTIFF HEREBY DEMANDS A TRIAL BY A JURY ON ALL ISSUES HEREIN.

Dated this 18th day of January, 2021.

Respectfully submitted,

*s/Jeffrey M. Villanueva*
Jeffrey M. Villanueva, #10001
Zachary M. Graupmann, #53478
1755 Blake Street, Suite 225
Denver, Colorado  80202
Telephone:  303-295-7525
Facsimile:    303-295-7511
**ATTORNEY FOR PLAINTIFF**

Address of Plaintiff:
7583 Lamar Ct.
Arvada, Colorado 80421-0942.

**EXHIBIT 1**