IN THE UNITED STATES DISTRICT COURT
FOR DISTRICT OF COLORADO

Civil Action No.: 1:21-CV-00498-RM

**JORY CASS**
    Plaintiff,

v.

**EVELYN ENCISO**
    Defendant.

---

**DEFENDANT'S MOTION TO STAY PROCEEDINGS**

---

Defendant Evelyn Enciso ("Ms. Enciso"), by her attorney Jeffrey M. Villanueva, P.C., and pursuant to *Colorado River Water Conservation Dist. v. U.S.* and Fed. R. Civ. P. 13(a), respectfully submit the following Motion to Stay Proceedings. In support of this Motion, Defendant Enciso states as follows:

### D.C.COLO.L.CivR. 7.1 Certification

Undersigned counsel certifies that he has contacted Plaintiff's counsel regarding this motion by e-mail and that Plaintiff's counsel has stated that this motion will be opposed.

### BACKGROUND

On January 18, 2021, Defendant in this matter filed a Complaint in the Jefferson County District Court against Plaintiff Jory Cass. The Complaint is hereby attached as *Exhibit 1*. The Complaint includes the following claims: breach of fiduciary duty, breach of partnership agreement, breach of implied contract, promissory estoppel, declaratory judgment as to Ms. Enciso's one-half ownership interest in the property at 7583 Lamar. Ct., Arvada, Colorado 80421

1

(hereinafter referred to as the "Property"), unjust enrichment, assault, battery, and for a constructive trust as to Ms. Enciso's one-half ownership interest in the Property.  On February 23, 2021, the Plaintiff in this matter ("Mr. Cass") filed a motion to dismiss in the state action, civil case no. 2021CV030057, which is pending as of this date.

Subsequently, on March 4, 2021, the Plaintiff in this matter filed a Complaint with this Court. *See* Dkt. #1.  On April 26, 2021, Plaintiff filed his First Amended Complaint.  *See* Dkt. #40.  The First Amended Complaint again requests injunctive relief denied by this Court on April 26, 2021.  *See* Dkt. #39.  Further, On January 13, 2021, Mr. Cass filed an unlawful detainer action in in Jefferson County Court.  After a hearing on February 8, 2021, the Jefferson County Court granted Ms. Enciso's motion to transfer to District Court.  Plaintiff appealed the County Court's finding on March 11, 2021 despite an agreement between the Parties that Ms. Enciso would vacate the Property on April 1, 2021.  Attached as *Exhibit 2* is an e-mail exchange between counsel for Plaintiff and Defendant memorializing such agreement on February 12, 2021.  Ms. Enciso filed a motion to dismiss the appeal as moot on April 20, 2021, which motion is also pending as of this date.

It is abundantly clear that Plaintiff vengefully seeks to exacerbate litigation and waste judicial resources by filing two separate, unnecessary actions and appealing one decision despite a prior agreement. Plaintiff conducted all this unnecessary effort instead of combining all the actions together in state court no. 2021CV030057 and properly alleging counterclaims.  Upon alleging his counterclaims undoubtedly identical to his Complaint in this action, Plaintiff could seek removal via federal question from state court to this Court pursuant to 28 U.S.C. § 1441(c).

Mr. Cass and Ms. Enciso began a romantic relationship in March 2015.  The relationship ended in July 2020.  Ms. Enciso wore a promise ring for a portion of the relationship between the

2

Parties as Mr. Cass had indicated he intended to propose marriage. At various times throughout the relationship, Mr. Cass referred to Ms. Enciso as his "wife." Ms. Enciso is a legal immigrant from Peru who has resided in the United States for approximately ten (10) years. Ms. Enciso's formal education is two (2) years of culinary school in Peru. Based upon how Mr. Cass treated her she believed that the parties actually had a common law marriage.

Mr. Cass is from the United States and has a bachelor's degree in criminal justice. He has previously worked as a court reporter and is familiar with the United States legal system. Throughout the course of the relationship, Mr. Cass has always handled all the couple's finances. Ms. Enciso routinely either gave or sent her paychecks to Mr. Cass to handle bills and expenses. Ms. Enciso was unable to spend her earned money as she wished due to Mr. Cass's assuming control over the finances. Throughout the relationship, Mr. Cass repeatedly reassured Ms. Enciso that he "would take care of her."

In 2016, the parties bought a house together in Florida. Collectively, the parties put down $25,000 for the Florida residence. Ms. Enciso put down approximately $10,000-12,000 toward the down payment. The home was titled in both parties' names. Both parties contributed to the increase in the property value through various improvements. The parties had a de facto partnership. In 2015, Ms. Enciso sent $20,000 to her family in Peru prior to entering into the relationship. Mr. Cass pressured Ms. Enciso to have her family return the money. Ms. Enciso's family returned the money and this money was used to pay for improvements, furniture and appliances for the shared Florida residence. Mr. Cass has admitted that Ms. Enciso is owed at least $20,000.

In January 2019, Mr. Cass insisted Ms. Enciso sign a quitclaim deed to the shared Florida residence. At that time, the parties had no intention to sell the Florida residence. Mr. Cass did

3

not tell or allow Ms. Enciso to seek independent counsel because Mr. Cass frequently reassured her the house was still "their home" and that he "would take care of her." Ms. Enciso trusted her romantic partner and did not understand the significance of such a document. Ms. Enciso received nothing in return. In June 2019, Mr. Cass sold the Florida residence and collected approximately $85,000 in net proceeds. These proceeds were the primary source of the down payment used to purchase the shared Colorado residence in July 2019. Mr. Cass added $10,000 to contribute to the down payment through a gift and through an IRA account in his name.

Ms. Enciso understood from Mr. Cass that the shared Colorado residence was intended to be owned by the Parties jointly. The shared Colorado residence was titled only in Mr. Cass's name despite the net proceeds from the sale of the shared Florida residence approximating the primary source for the down payment. The Parties have routinely rented available rooms within the shared Colorado residence to guests using the Airbnb platform. Both Mr. Cass and Ms. Enciso acted as hosts for the guests renting. Ms. Enciso often cooked breakfasts, lunches, or dinners for the guests staying in the shared Colorado residence.

On December 20, 2019, the Parties purchased a 2020 Tesla Model 3. The Tesla was titled in Mr. Cass's name only. Ms. Enciso contributed approximately $5,000 toward the purchase of the 2020 Tesla Model 3.

In July 2020, Ms. Enciso's father passed away in Peru due to the novel Coronavirus. Mr. Cass was not supportive during this time and Ms. Enciso travelled to California for two weeks. Upon her return, Ms. Enciso ended the romantic relationship. On August 19, 2020, Mr. Cass called the police after an altercation which included Ms. Enciso. However, it was Mr. Cass who was arrested and charged with domestic violence and criminal mischief because he had assaulted Ms. Enciso, left bruises on her arms and broke her mobile phone. He has since pled guilty to

criminal mischief with a domestic violence finding.

Due to educational and cultural differences between Mr. Cass and Ms. Enciso, Mr. Cass has repeatedly exploited his influence and power over Ms. Enciso and the relationship to create a disproportionate power structure in the relationship.  Mr. Cass created a financial dependency and exploited the educational differences between the Parties to manipulate and exert control over both the relationship and Ms. Enciso.  Mr. Cass has now repudiated his agreements with and promises to Ms. Enciso.  He denies that she has any interest in either the proceeds used to purchase the shared Colorado residence or the shared Colorado residence.

## DISCUSSION

### A.  The United States District Court for the District of Colorado may stay proceedings.

In *Colorado River Water Conservation Dist. v. U.S.*, the Supreme Court of the United States stated that dismissal of the federal case would have been inappropriate if the state court had no jurisdiction to decide the claims, but that the state court in fact had jurisdiction to decide the matter.[1]  "The *Colorado River* doctrine applies to 'situations involving the contemporaneous exercise of concurrent jurisdictions . . . by states and federal courts.'"[2]  "[T]he decision whether to defer to the state courts is necessarily left to the discretion of the district court in the first instance."[3]

In *Wakaya Perfection LLC v. Youngevity International, Inc.*, the Tenth Circuit Court followed the Eighth Circuit Court's precedent in *United States v. Rice*, which stated "a necessary premise of *Colorado River* abstention is the pendency of 'parallel state and federal

---

[1] 424 U.S. 800, 809 (1976).
[2] *Fox v. Maulding*, 16 F.3d 1079, 1080 (10th Cir. 1994) (*quoting Colorado River*, 424 U.S. at 817).
[3] *Id*. (*quoting Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 19 (1983).

5

proceedings.'"[4]  "[T]he doctrine is often treated as a variety of absention and is governed by the general principal that '[a]bstention from the exercise of federal jurisdiction is the exception, not the rule.'"[5]  Although a case may not fall within any of the abstention categories, "there are principles unrelated to considerations of proper constitutional adjudication and regard for federal-state relations which govern in situations involving the contemporaneous exercise of concurrent jurisdictions, either by federal courts or by state and federal courts."[6]  "These principles rest on considerations of '(w)ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation.'"[7]

"A federal court must first determine whether the state and federal proceedings are parallel."[8]  The Tenth Circuit examines state proceedings as they actually exist to determine whether they are parallel to the federal proceedings.[9]  "[T]he existence of proceedings in state court does not by itself preclude parallel proceedings in federal court."[10]  "[I]f a federal court determines the state and federal proceedings *are* parallel, it must then determine whether deference to state court proceedings is appropriate under the particular circumstances."[11]

Although declining to exercise jurisdiction based on the *Colorado River* doctrine is appropriate only in exceptional circumstances, the Supreme Court has set forth a nonexclusive

---

[4] Wakaya Perfection, LLC. v. Youngevity International, Inc., 910 F.3d 1118, 1123 (10th Cir. 2018) (*quoting* United States v. Rice, 605 F.3d 473, 476 (8th Cir. 2010)) (citation omitted).
[5] *Id*. (*quoting Colorado River*, 424 U.S. at 813).
[6] *Colorado River*, 424 U.S. at 817.
[7] *Id*. (*quoting Kerotest Mfg. Co. v. C-O-Two Fire Equipment Co.*, 342 U.S. 180, 183 (1952).
[8] Fox v. Maulding, 16 F.3d 1079, 1082 (10th Cir. 1994).
[9] *Id*.
[10] Fox v. Maulding, 16 F.3d 1079, 1082 (10th Cir. 1994) (*quoting* New Beckley Mining Corp. v. International Union, UMWA, 946 F.2d 1072, 1073 (4th Cir. 1991).
[11] *Id*. (*alteration in original*).

list of factors for a court to consider in determining whether 'exceptional circumstances' exist.[12] This list includes: "(1) whether the court has assumed jurisdiction over the property; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation: and (4) the order in which the courts obtained jurisdiction."[13] The Supreme Court discussed other factors, such as the vexatious or reactive nature of either the federal or state action; whether federal law provides the rule of decision, the adequacy of the state court action to protect the federal plaintiff's rights.[14] The Ninth Circuit whether the party opposing abstention has engaged in impermissible forum-shopping.[15]

In *Fox v. Maulding*, the Tenth Circuit Court provided "[w]e think the better practice is to stay the federal action pending the outcome of the state proceedings."[16] "In the event the state court proceedings do not resolve all the federal claims, a stay preserves an available federal forum in which to litigate the remaining claims, without the plaintiff having to file a new federal action."[17]

Here, the cases are undoubtedly parallel. Both cases arise out of the financial relationship between the parties. The state court action involves a dispute regarding ownership of the property at 7583 Lamar Ct., Arvada 80421, the same property Plaintiff alleges Defendant damaged, stole items and documentation from, and allegedly committed a violation of the Computer Fraud and Abuse Act ("CFAA") under 18 U.S.C. § 1030 in using the Airbnb, Inc. platform. Plaintiff alleges $6,000 in civil theft damages due to Defendant's "intentional act of

---

[12] Fox v. Maulding, 16 F.3d 1079, 1081 (10th Cir. 1994); Colorado River Water Conservation Dist. v. U.S., 424 U.S. 800, 818 (1976); Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 19 (1983).
[13] *Id.*; *see* Colorado River, 424 U.S. at 818.
[14] Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 18 n.20, 23, 28 (1983).
[15] Travelers Indem. Co. v. Madonna, 914 F.2d 1364, 1370-71 (9th Cir. 1990).
[16] Fox v. Maulding, 16 F.3d 1079, 1083 (10th Cir. 1994).
[17] *Id.*

changing the key passcode." *See* Dkt. #40, ¶ 118.  Further, Plaintiff alleges that "Defendant intends to deprive Plaintiff of his [Property] interests permanently."  *See* Dkt. #40, ¶ 116 (*alteration in original*).  The state court Complaint also alleges, among other things, that the AirBnb was a partnership between the parties, not just Mr. Cass' business, as well as an unjust enrichment claim as to Ms. Enciso's interest in the Tesla vehicle, for which Plaintiff claims is solely his vehicle in his Complaint.  *See* Dkt. #40, ¶ 48.  Clearly, the state and federal actions involve the same set of facts and are parallel to one another.

In this case, the *Colorado River* doctrine and it's offspring setting forth a nonexclusive list of exceptional circumstances to warrant this Court's deference in this action to the Jefferson County District Court applies.  Here, the Jefferson County District Court maintains jurisdiction over the Property in dispute.  Further, piecemeal litigation between the federal and state court actions threatens inconsistent and contradictory results.  The Jefferson County District Court obtained jurisdiction on January 18, 2021 compared to this Court obtaining jurisdiction on March 4, 2021.  Plaintiff's efforts in filing this case, as well as the unlawful detainer action and the unnecessary appeal of the unlawful detainer action, prove the vexatious and reactive nature of this lawsuit.  Plaintiff's allegations of violations of the CFAA by Defendant is the only federal question allowing this Court to exercise jurisdiction over this action.  Because the CFAA is not subject to the exclusive jurisdiction of federal forums, a state court is able decide an action involving violations of the CFAA.  Finally, Plaintiff's numerous filings in different courts show forum-shopping is a concern.  This Court, in its discretion, maintains the authority to stay the current action pursuant to *Colorado River* abstention doctrine.

### B. Plaintiff's Claims before this Court are Compulsory Counterclaims needed to be brought in the Jefferson County District Court action.

Rule 13(a) of the Colorado Rules of Civil Procedure and of the Federal Rules of Civil Procedure provide that a compulsory counterclaim must be pled against the opposing party who brought suit if the pleading arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require a third party of whom the court cannot acquire jurisdiction for its adjudication.[18]

"Generally, a counterclaim is compulsory if it arises out of the same transaction or occurrence as the opposing party's claim."[19] Colorado state and federal court determine whether a claim arises out of the same transaction or occurrence as the first claim is the "logical relationship test: whether the subject matter of the counterclaim is logically related to the subject matter of the initial claim."[20]

Plaintiff's claims undoubtedly arise from the same transaction or occurrence that is the subject matter of the civil case in the Jefferson County District Court. To allow both cases to proceed at the same time would result in a massive duplication of time and effort in discovery on behalf of the Parties and their counsel alike if allowed further as a separate lawsuit. The ownership claims as to the Property and alleged computer fraud using the Airbnb, Inc platform, the claims surrounding the Tesla Vehicle, the alleged property damage and stolen documents all

---

[18] F.R.C.P. 13(a) (2021); C.R.C.P. 13(a) (2021).
[19] In re Est. of Krotiuk, 12 P.3d 302, 304 (Colo. App. 2000).
[20] *Id*.; *see Visual Factor, Inc. v. Sinclair*, 441 P.2d 643 (1968) (citing federal cases using a "logical relationship" test to determine if a counterclaim is compulsory); *Beathune v. Cain*, 494 P.2d 603 (1971) (a counterclaim is logically related to the opposing party's claim where separate trials on each of their respective claims would involve a substantial duplication of effort and time by the parties and courts); *see* FDIC v. Hulsey, 22 F.3d 1472 (10th Cir. 1994) ("(1) the issues of fact and law raised by the principal claim and counterclaim are largely the same; (2) res judicata would bar a subsequent suit on defendant's claim; (3) the same evidence supports or refutes the principal claim and counterclaim; and (4) there is a logical relationship between the claim and counterclaim.") (*citation omitted*).

relate to Ms. Enciso's claims in Jefferson County District Court. Further, although the CFAA is a federal statute, federal courts do not retain exclusive jurisdiction over CFAA claims. Instead, federal and state courts maintain concurrent jurisdiction to decide claims under the CFAA.[21]

## CONCLUSION

Defendant Enciso respectfully urges this Court to grant her Motion to Stay These Proceedings. This Court should decline to exercise jurisdiction pursuant to the *Colorado River* abstention doctrine, as at least six of the eight listed factors in support of a stay of this proceeding have been met. Further, Plaintiff's claims in his Complaint are compulsory counterclaims logically related to Defendant's claims in her Complaint in Jefferson County District Court. Claims brought under the CFAA pursuant to 18 U.S.C. § 1030 are not subject to exclusive jurisdiction of federal courts. As such, both federal and state courts maintain concurrent jurisdiction to determine this matter.

Dated this 27th day of May, 2021.

Respectfully submitted,

*s/Zachary M. Graupmann*
Jeffrey M. Villanueva
Zachary M. Graupmann
Jeffrey M. Villanueva, P.C.
1755 Blake Street, Suite 225
Denver, Colorado 80202
Telephone: 303-295-7525
E-mail: jeff@jmvpclaw.com
zac@jmvpclaw.com
**ATTORNEYS FOR DEFENDANT EVELYN ENCISO**

---

[21] Steven J. From & Joseph A. Martin, *Trade Secret Litigation*, 798 Prac. L. Inst. 655, 679 (2004) ("The absence of any limitations on where . . . [CFAA] civil actions may be filed leaves open the possibility that State courts will have concurrent jurisdiction with the federal courts over such claims."); *see* H & R Block Tax Servs., Inc. v. Rivera-Alicea, 570 F. Supp. 2d 255, 268 n.5 (D.P.R. 2008) ("This court does not have exclusive jurisdiction over Block's CFAA claim.").

## CERTIFICATE OF SERVICE

I hereby certify that on May 27, 2021, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, and I hereby certify that I have served the document to the following non CM/ECF participants in the manner indicated by the non-participant's name:

Victoria E. Edwards
Jackson Kelly, PLLC
1099 Eighteenth Street, Suite 2150
Denver, Colorado 80202
E-mail: victoria.edwards@jacksonkelly.com
*Attorney for Jory Cass*

Jacqueline V. Roeder
Tess Hand-Bender
DAVIS GRAHAM & STUBBS LLP
1550 Seventeenth Street, Suite 500
Denver, Colorado 80202
E-mail: Jackie.Roeder@dgslaw.com
          Tess.Hand-Bender@dgslaw.com
*Attorneys for Airbnb, Inc.*

                                                                     s/Zachary M. Graupmann
                                                               Zachary M. Graupmann
                                                               jeff@jmvpclaw.com
                                                               zac@jmvpclaw.com
                                                               JEFFREY M. VILLANUEVA, P.C.
                                                               1755 Blake Street, Suite 225
                                                               Denver, Colorado 80202
                                                               Telephone: 303-295-7525
                                                               Facsimile:  303-295-7511