# DOMESTIC VIOLENCE CASE INVESTIGATION FORM

| Officer Name: Conley | Officer #: 1816 | Officer Agency: Arvada | CR: AR20 13769 |
|---|---|---|---|

Suspect name and DOB: Cass, Jory ████████  Victim name and DOB: Enciso, Evelyn ████████

## THE SCENE

### EVIDENCE

Physical evidence collected: (ex: torn clothing, broken objects) ☒ Yes ☐ No
Location collected: ☒ Crime Scene ☐ Hospital ☐ Other
Photos taken: ☒ Victim ☐ Suspect ☐ Crime Scene ☒ Physical Evidence
☐ Witness ☐ Other: _____
Property damage present? ☒ Yes ☐ No
If yes, what is the approximate value: $1000
Witnesses present during incident: ☐ Yes ☒ No
Witness statements taken: ☐ Yes ☒ No
All witness identifying info in report: ☐ Yes ☒ No
Suspect identified by: ☐ Victim ☐ Witness
☒ Suspect on scene ☐ Photo ID completed/collected

### CHILDREN

Were children present? ☐ Involved ☐ Intervened
☐ Yes ☒ No      ☐ Injured ☐ Interviewed
How many? _____
DHS called for this incident?
☐ Yes ☐ No

Child: _____ DOB: _____
Location during incident: _____
Emotional demeanor: _____

Child: _____ DOB: _____
Location during incident: _____
Emotional demeanor: _____
Use separate sheet for additional children

PTS use only

## RISK ASSESSMENT

**OFFICER INSTRUCTIONS:** Please ask the following questions about the current assault. If this incident was not an assault but the suspect has been physically violent toward the victim in the past, answer the questions based upon the last time the suspect was violent towards the victim.

**O D A R A**

Does the suspect have a prior **domestic** assault that was reported to police (against a partner or the children)? ☐ Yes ☐ No ☐ Unknown
Does the suspect have a prior **non domestic** assault that was reported to police (against any person other than a partner or the children)? ☐ Yes ☐ No ☐ Unknown
Has the suspect ever been sentenced to 30 days or more of incarceration (full 30 days need not have been served)? ☐ Yes ☐ No ☐ Unknown
Has the suspect violated a prior or current protection order, bond, parole, or probation? ☐ Yes ☐ No ☐ Unknown
Did the suspect threaten to physically harm or kill you or anyone else during this incident? ☐ Yes ☐ No ☐ Unknown
What was the threat? _____
Did the suspect do anything to prevent you from leaving during this incident? ☐ Yes ☐ No ☐ Unknown
Describe: _____
Are you concerned the suspect will assault you or the children in the future? ☐ Yes ☐ No ☐ Unknown
Total number of biological and adopted children (including adult children or children living out of the home):
Together _____
Suspect _____ NOT including shared children ☐ Unknown
Victim _____ NOT including shared children
(If more than 1 mark "yes")
Do you have a biological child from another relationship? ☐ Yes ☐ No
Is the suspect violent to people other than you and/or the children? ☐ Yes ☐ No ☐ Unknown

Did the suspect drink **alcohol** just before or during this assault? ☐ Yes ☐ No ☐ Unknown
Did the suspect use **drugs** just before or during this assault? ☐ Yes ☐ No ☐ Unknown
Did the suspect abuse alcohol or drugs in the few days or weeks before this assault? ☐ Yes ☐ No ☐ Unknown
Did the suspect abuse alcohol or drugs more than usual in the few days or weeks before the assault? ☐ Yes ☐ No ☐ Unknown
Is the suspect more angry or violent when using drugs or alcohol? ☐ Yes ☐ No ☐ Unknown
Has the suspect ever been charged for something s/he did when drinking or using drugs? ☐ Yes ☐ No ☐ Unknown
Has the suspect had an **alcohol** problem at any time since s/he was 18 that resulted in problems in his/her life? ☐ Yes ☐ No ☐ Unknown
(ex: legal, financial, work, relationships, health)
Has the suspect had a **drug** problem at any time since s/he was 18 that resulted in problems in his/her life? ☐ Yes ☐ No ☐ Unknown
(ex: legal, financial, work, relationships, health)

Were you pregnant at the time of the incident? ☐ Yes ☐ No ☐ Unknown
If yes, did the suspect know/have reason to know? ☐ Yes ☐ No ☐ Unknown
Did the suspect ever assault you when you were pregnant? ☐ Yes ☐ No

Do you have any children at home ages 18 or younger? ☐ Yes ☐ No
Do you **lack** access to a telephone? ☐ Yes ☐ No
Do you **lack** access to transportation? ☐ Yes ☐ No
Do you **lack** neighbors nearby? ☐ Yes ☐ No
Were you using alcohol or drugs when this incident occurred? ☐ Yes ☐ No
Have alcohol or drugs ever caused any problems in your life? ☐ Yes ☐ No

☐ Suspect possesses or has access to weapons
☐ Guns ☐ Knives ☐ Other: _____
Describe: _____
☐ Weapon used during incident
Describe Weapon: _____
☐ Threats with weapons
Describe: _____
☐ Suspect has threatened suicide.
If so, when? _____
☐ Suspect has made death threats in the past
☐ Victim ☐ Pets ☐ Others
When? _____

☒ Separation (recent or past)
If yes, when? June 22nd 2020
☒ Suspect is jealous or obsessive about victim
☒ Suspect states he will not let victim go
☐ Suspect has in the past been restrained from contacting victim or children
☒ Suspect is enraged or feels betrayed by victim efforts to leave
☒ Abuse has become more frequent
☒ Suspect controls victim's daily activities
☐ Victim broken bones
☐ Victim hospitalization/ER
☐ Pet Abuse
☐ Child Abuse

Suspect not:
☒ Sleeping ☐ Eating ☐ Working
Suspect loss of:
☐ Housing ☐ Job ☐ Loved one
☐ Other: _____
☐ Suspect suffers from mental/emotional conditions (ex: depression)
☐ Is taking medication
☐ Has taken medication
☐ Compliant with prescription
Diagnosis: _____

SCORE

Revised 2/24/19

**Exhibit 2**
**Response to Motion to Dismiss**

Suspect: Cass, Jay ████   Victim: Enciso, Evelyn   CR: A120-13169   Agency: Arvada

## VICTIM INFORMATION

**VICTIM BEHAVIOR (as witnessed by officer):**
- [ ] Calm
- [x] Crying
- [ ] Minimizing
- [ ] Agitated
- [ ] Numb
- [x] Nervous
- [ ] Afraid
- [ ] Angry
- [ ] Apologetic
- [ ] Distraught
- [ ] Reluctant
- [ ] Flat affect
- [ ] Threatening
- [ ] Other: _____

Involved?   [ ] Alcohol   [ ] Drugs

**VICTIM INJURIES?** [x] Yes [ ] No   SBI Form? [ ] Yes
If yes,
- [x] Complaint of Pain
- [ ] Bruise(s)
- [ ] Abrasions
- [ ] Minor Cuts
- [ ] Lacerations
- [ ] Other: _____
- [ ] Fractures
- [ ] Concussion

Medical Evaluation [ ] EMS [ ] Hospital [ ] Declined
[ ] Medical Release signed by victim [ ] Medical witness info in report

### RELATIONSHIP TO SUSPECT
- [ ] Spouse
- [ ] Former cohabitants
- [ ] Same sex partner
- [x] Former spouse
- [ ] Dating/Engaged
- [ ] Emancipated minor
- [ ] Cohabitants
- [ ] Former dating
- [ ] Child in common

Length of Relationship: 5 Years ___ Months
If applicable, date relationship ended: June 22nd, 2020
[x] Victim has pets: Shares 2 Husky dogs w/ suspect

**EMERGENCY CONTACT:** Tell victim info NOT confidential (x)
Name: Cesar Meza or Joanna (u last)
Phone: 323/302/2432   720/212/8904
Email: _____

### DESCRIPTION OF INCIDENT
- [ ] Kicking
- [x] Throwing objects
- [x] Grabbing
- [ ] Violation of PO
- [x] Strangulation
- [ ] Stalking
- [x] Fear for Life
- [ ] Other
- [x] Slapping-open hand
- [x] Pushing
- [ ] Hitting-closed fist
- [ ] Biting
- [ ] Suffocation/Restricted Breathing
- [ ] Non consent sex
- [ ] Weapons

Suspect Demeanor: "Pissed out of control"

**AT RISK ADULTS: (18-6.5-102)**
Is the victim 70 years or older?   [ ] Yes [x] No
Does the victim have a disability?   [ ] Yes [x] No
If yes, describe: _____

## SUSPECT INFORMATION

**Suspect Behavior (as witnessed by officer)**
- [x] Calm
- [ ] Crying
- [ ] Minimizing
- [ ] Agitated
- [ ] Numb
- [ ] Nervous
- [ ] Afraid
- [ ] Angry
- [ ] Apologetic
- [ ] Distraught
- [ ] Reluctant
- [ ] Flat affect
- [ ] Threatening
- [ ] Other: _____

Involved?   [ ] Alcohol   [ ] Drugs

**SUSPECT INJURIES?** [x] Yes [ ] No   right collarbone
If yes,
- [ ] Complaint of Pain
- [ ] Bruise(s)
- [ ] Abrasions
- [x] Minor Cuts
- [ ] Lacerations
- [ ] Other: _____
- [ ] Fractures
- [ ] Concussion

Medical Evaluation [ ] EMS [ ] Hospital [ ] Declined

## SUSPECT PRIOR DV BEHAVIORS
- [x] Isolation
- [x] Coercion
- [ ] Threatens to take children
- [x] Controls money
- [x] Name calling
- [x] Intimidation
- [x] Throwing things
- [ ] Hitting
- [x] Damage property
- [ ] Biting
- [ ] Kicking
- [x] Pushing/grabbing
- [ ] Strangulation
- [ ] Stalking
- [ ] Non Consent Sex
- [ ] Violation of PO
- [ ] Prior DV witnessed by children
- [x] Prevented report
- [ ] Other: _____

Approximate number of prior incidents (reported and unreported) 20
Number of prior incidents reported to Law Enforcement: 1

## STALKING

Is there a current Protection Order protecting victim from suspect: [ ] Yes [x] No   If yes: [ ] Civil [ ] Criminal
[ ] Repeated communication, repeatedly following, approaching, contacting or surveying **plus** at least one of the following:
- [ ] Resulting in serious emotional distress **and/or**
- [ ] Credible threat (credible threat = threat, physical action or repeated conduct causing fear)

The victim has changed his/her phone, address, job, normal routine, etc.: [ ] Yes [x] No

## STRANGULATION/SUFFOCATION

**STRANGULATION METHOD:**
[ ] One hand: Circle Right or Left   [ ] Both Hands   [ ] Forearm   [ ] Knee/Foot   [ ] Choke-hold   [ ] Object: ____
[ ] Suffocation/Restricted Breathing using: _____   [ ] Other _____
Did the suspect put anything on your face, neck or chest to prevent your breathing? [ ] Yes [ ] No [ ] Unknown Describe: ____
How many times do you remember being strangled (this incident only)? _____
Pressure of strangulation (on a scale of 1-10, 10 being the most pressure, how hard was the suspect's grip?): ____
Approximate length of strangulation: _____   What did you think was going to happen? ____
What caused the suspect to stop? ____
Position of the suspect in relation to the victim (ex: face to face, from behind, on the ground, sat on chest, etc.): ____
Position of the victim during the strangulation (ex: on the ground, standing up, against a wall, etc.): ____
Words spoken by suspect **before** strangulation: _____
Words spoken by suspect **during** strangulation: _____
Words spoken by suspect **after** strangulation: _____
Suspect facial expression and demeanor during strangulation: _____
What else did the suspect do while strangling you? _____
Were you able to speak during the strangulation? [ ] Yes [ ] No   If yes, what did you say? ____
Were you able to do anything physical to stop the strangulation? [ ] Yes [ ] No   If yes, what? ____

**LOCATION OF INJURIES:**
- [ ] Scalp
- [ ] Behind ears
- [ ] Jaw
- [ ] Face
- [ ] Eyelids
- [ ] Eyes
- [ ] Nose
- [ ] Lips
- [ ] In mouth/throat
- [ ] Chin
- [ ] Under Chin
- [ ] Neck
- [ ] Shoulder
- [ ] Chest
- [ ] Other: ____

**DESCRIPTION OF INJURIES:**
- [ ] Redness
- [ ] Swelling on neck
- [ ] Scrapes
- [ ] Finger/hand marks
- [ ] Lumps on neck
- [ ] Scratch marks
- [ ] Ligature marks
- [ ] Bruising
- [ ] Hair missing
- [ ] Blood in eyeball
- [ ] Eyelid droop
- [ ] Other: ____
- [ ] Tiny red marks (petechiae) Where?

**THE VICTIM EXPERIENCED:**
- [ ] Thrown against the wall/floor/etc.
- [ ] Hyperventilation
- [ ] Dizziness
- [ ] Numbness
- [ ] Shaken by suspect
- [x] Need to clear throat
- [ ] Faintness
- [ ] Tingling in lips, arms or legs
- [ ] Physical pain
- [ ] Changing pitch of voice
- [ ] Blurry vision
- [ ] Nausea
- [ ] Pain/tender throat/neck
- [ ] Raspy voice
- [ ] Balance/coordination changes
- [ ] Vomiting/dry heaving
- [ ] Headache/head throb
- [ ] Hoarseness
- [ ] Memory Loss
- [ ] Involuntary urination
- [ ] Pain/trouble when swallowing
- [ ] Coughing
- [ ] Felt limp
- [ ] Involuntary defecation
- [ ] Trouble breathing
- [ ] Loss of consciousness/blackout
- [ ] Hearing changes
- [ ] Other: ____
- [ ] Trouble catching breath
- [ ] "Saw Stars"
- [ ] Disoriented

Revised 2/24/19

Exhibit 2
Response to Motion to Dismiss

DISCOVERY PAGE 9



# Arvada Police Department

## Incident: AR20013769

## Incident details:

| | |
|---|---|
| **Incident Type:** | CRIMINAL MISCHIEF/TAMPERING |
| **Incident time:** | 08/19/2020 18:48 - 08/19/2020 18:48 |
| **Reported time:** | 08/19/2020 18:48 |
| **Incident location:** | 7583 LAMAR CT, ARVADA, JEFFERSON CO 80003 (Beat: APDSECTORA) (CADRESULT - 7583 LAMAR CT AR 80003 |
| **Incident status:** | Closed |
| **Reporting officer:** | #1816 CONLEY, C. |
| **Investigator:** | |
| **Summary:** | Male broke ex-girlfriends phone during argument. |

## Involved Persons:

| | |
|---|---|
| **Name:** | CASS, JORY DAVID |
| **Classification:** | Arrested; Charged; Offender; Reporting party |
| **DL:** | 171247908 CO |
| **Address:** | 7583 LAMAR CT, ARVADA, JEFFERSON CO 80003 (Beat: APDSECTORA) (CADRESULT - 7583 LAMAR CT AR |
| **Telephone:** | (Cell phone) (305) 519-1331 [Residence] |
| **Gender:** | Male |
| **DOB:** | ██████ |

| **Height:** | 5'11" | **Weight:** | 170lb | **Build:** | |
| **Race:** | White | **Hair Color:** | Brown | **Eye Color:** | Hazel |

| | |
|---|---|
| **Name:** | ENCISO, EVELYN |
| **Classification:** | Victim |
| **DL:** | |
| **Address:** | 7583 LAMAR CT, ARVADA, JEFFERSON CO 80003 (Beat: APDSECTORA) (CADRESULT - 7583 LAMAR CT AR |
| **Telephone:** | (Cell phone) (720) 800-3265 [Residence] |
| **Gender:** | Female |
| **DOB:** | ██████ |

| **Height:** | | **Weight:** | | **Build:** | |
| **Race:** | White | **Hair Color:** | | **Eye Color:** | |

## Involved Property:

- Personal: Cell phone / Damaged / APPLE IPHONE X [IPHONE] / $899.99

## Involved Officers:

Printed: 08/20/2020 07:29 by 9813

Page: 1 of 4

**Exhibit 2**

**Response to Motion to Dismiss**

- #1608 BRUNETT, P. (Back-up officer)
- #1110 NESLADEK, D. (Back-up officer)
- #1816 CONLEY, C. (Reporting officer)
- #000000 CAD INTERFACE (Reporting officer)

## Reports:

### General report:

| **Author:** | #1816 CONLEY, C. | **Report time:** | 08/19/2020 23:23 |
|---|---|---|---|

**Narrative:**

On 08/19/2020 at approximately 1850 hours, I (Officer Conley) was dispatched to 7583 Lamar Ct, Arvada, Jefferson County, CO reference a domestic. The call initially was an open line, and dispatch aired they could hear a disturbance with male and female voices. At one point, the call taker stated they heard, "You're assaulting me." The female was identified as Evelyn Enciso (DOB: ██████████).

I arrived on scene with Officer Brunett, and we approached the house slowly. Upon getting close to the front door, I could very distinctly hear a male and female arguing inside. At one point, I heard the male say, "You're crazy." I knocked on the door a couple times, and a male, later identified as Jory Cass (DOB: ██████████), opened the door. I asked Jory if he would step outside and speak with Officer Brunett, and he said yes. I asked Jory where Evelyn was located, and he said something to the effect of, "She's sitting right there," while gesturing his arm towards the inside of the house. Jory stepped outside, and I stepped in the doorway. I observed a female, later identified as Evelyn Enciso (DOB: ██████████), sitting in a chair near the front door and adjacent to the hallway. I asked Evelyn if I could step inside the house to speak with her, and she said yes. Evelyn advised of the following:

Evelyn and Jory were together for 5 years and broke up around June 22nd, 2020. Evelyn stated the house is in Jory's name, but she has been living there for about a year. Evelyn said she has nowhere else to go, and Jory has been letting her stay at the house. She said she has already packed up a few things (there were packed bags in the living room) but needed to still pack up the bed. Evelyn said she began getting the bed together and left plastic wrap in the hallway, which was still lying in the hallway during my conversation with Evelyn. Jory had not been at the house for about a day or so and arrived home at about 1820 hours. Evelyn said she was sitting in the "extra bedroom," which was determined to be the bedroom at the end of the hallway on the right side. Jory observed the plastic wrap in the hallway and began yelling insults towards Evelyn. Evelyn said Jory called her several names and threatened to get her deported. Evelyn said she began recording Jory on her white Apple iPhone X, which upset Jory even further. Jory grabbed Evelyn's phone and walked into the "bedroom," which was determined to be the bedroom at the end of the hallway on the left side, across the hall from the "extra bedroom." Evelyn followed Jory and repeatedly asked for her phone back. At one point, Jory "lunged" towards Evelyn and said he was going to hit her. Evelyn described Jory's body language as raising 2 closed fists near his head and jumping towards her.

Evelyn said Jory pushed her about 2 or 3 times, resulting in her falling on the ground twice. Evelyn could not remember where Jory pushed her. Evelyn said that during one of the times she fell, she reached out towards Jory's collar to grab onto in an effort to stop her from falling. It should be noted that Jory had a scratch on his neck, and Evelyn believed she caused the scratch by her trying to grab onto him to prevent her from falling. Evelyn repeatedly was grabbing and holding onto her left arm throughout our conversation, and I observed some

**Exhibit 2**

**Response to Motion to Dismiss**

slight redness on her left arm, around her outer bicep. It should be noted that Evelyn could not recall exactly how her arm was hurt but stated something to the effect of, "He gets rough sometimes." Evelyn stated she did not want medical attention. Evelyn stated Jory then took her phone and smashed it on the nightstand in the bedroom and put it in his pocket. Evelyn stated she and Jory separated after this occurred.

I asked Evelyn where her phone was currently located, and she stated Jory still had it. Jory overheard me ask this question and pulled out a white iPhone (in a clear but worn case, resulting in discoloration), out of his pocket and set it on the kitchen counter. Officer Brunett then walked Jory back outside the house. I could clearly observe damage to the bottom left corner of the iPhone screen. I asked Evelyn if this was new damage, and she said yes. Evelyn advised the phone is under Jory's family phone plan, but she pays him monthly for the phone. Evelyn approximated the iPhone's value at $1000.00. Evelyn advised the phone was no longer turning on and did not know the approximated damage amount.

I spoke with Officer Brunett, who relayed that Jory admitted to taking Evelyn's phone and smashing the front screen. Jory was placed into custody for the charge of Domestic Violence-Criminal Mischief. Officer Brunett transported Jory to Arvada Police Headquarters for standard booking procedures and later to the Jefferson County Jail. For further, please refer to his report.

I remained at the house and completed domestic violence victim paperwork with Evelyn. I asked Evelyn if she would consent to having me logging her white iPhone X into Arvada Evidence and obtaining the recordings she took of Jory. Evelyn stated she would consent to me taking the phone and consented to a search of her voice memos, which was where she said she recorded Jory. Evelyn provided a passcode of 140204 for the phone. Evelyn signed a Consent to Search form for the phone and the voice memos, which I later logged and scanned into Arvada Evidence. I also logged and scanned the victim paperwork into Arvada Evidence. I also took several photographs of the phone and Evelyn's arms. I could only observe redness on Evelyn's left upper arm. Evelyn again said she could not remember specifically what caused the redness. I logged these photographs into Arvada Evidence.

Evelyn requested a phone call from VOI. I contacted VOI and provided them with her contact information, and they stated they would attempt to speak with her tonight (08/19/2020). Evelyn was also provided a Victim's Rights brochure on scene.

I have nothing further regarding this incident. Please refer to other Arvada officers' reports for further information.

**Exhibit 2**

**Response to Motion to Dismiss**

## Supplementary Incident Report

Arvada Police Department

*Printed:*          08/20/2020 07:30 by 9813

*Incident:*      **AR20013769 CRIMINAL MISCHIEF/TAMPERING @08/19/2020 18:48**

*Author:*     #1110 NESLADEK, D.
*Entered by:* #1110 NESLADEK, D.

*Report time:*  08/19/2020 21:21
*Entered time:* 08/19/2020 21:21

**Remarks:**

Supp 1 D. Nesladek

**Report:**

On Wednesday, August 19th, 2020 at approximately 1848 hours, I (Sergeant D. Nesladek) overheard Officers P. Brunett and C. Conley respond to 7583 Lamar Ct, Arvada, Jefferson County, Colorado 80003 to investigate a reported domestic disturbance.

I received a phone call from Officer Brunett at approximately 1907 hours explaining to me what transpired reference the domestic disturbance and he explained he and Officer Conley reportedly believed there was probable cause to charge the male party with criminal mischief for knowingly damaging his girlfriend's smart phone. After hearing this information, I advised Officer Brunett that I would be en route to his location to verify if he had any other questions or needed any further assistance with this investigation.

At approximately 1924 hours, I arrived on scene and learned from Officer Brunett that the male party he had been interviewing reportedly alleged that the female half of this incident scratched him and that his 9-1-1 call would be able to verify he was assaulted.

Since the cellular phone belonging to the female was still damaged as a result of the male slamming it down, he was placed under arrest for criminal mischief, and I then contacted the Arvada Police Department dispatch team to speak with to the initial call taker.

Upon speaking with the call taker, I learned that the original call had been answered by the Westminster Police Department dispatch team, at which time the call taker could hear a male voice stating the address of the call location. The call taker at Westminster reportedly could hear a female asking for her phone back. At that point in time, the Arvada Police dispatch call taker informed me that the call was transferred over to them, and they began trying to obtain additional information. The call taker indicated that she could hear a male state something to the effect of "You're assaulting me", to which a female voice could be heard replying something to the effect of, "I'm not touching you". The Arvada Police dispatch call taker then indicated that she could hear a female stating something to the effect of "Give me my phone back".

The Arvada Police dispatch call taker indicated that she continued to try to obtain pertinent information prior to officers arriving on scene, but that there was no other pertinent information relevant to this incident that she could recall during our conversation.

After hearing this information from the call taker, I thanked her for her time and relayed to Officers Conley and Brunett that there did not appear to be any specific exculpatory evidence to show that the male party had been assaulted as he reported. At approximately 1937 hours, I then requested an official Jeffcom 9-1-1 evidence download of the complete 9-1-1 call and requested it be uploaded via Discovery. I later printed out and scanned the evidence request per departmental policy and procedure and will wait to review the request once I receive it. This concludes my involvement in this incident, for more details regarding this case please refer to all other reports and evidence.

**Exhibit 2**

**Response to Motion to Dismiss**

C0302020M004372                                              DISCOVERY PAGE 16

## Supplementary Incident Report

| | |
|---|---|
| Arvada Police Department | |
| *Printed:* | 08/20/2020 07:30 by 9813 |
| *Incident:* | AR20013769 CRIMINAL MISCHIEF/TAMPERING @08/19/2020 18:48 |

*Author:*    #1608 BRUNETT, P.          *Report time:*  08/19/2020 23:30
*Entered by:* #1608 BRUNETT, P.          *Entered time:* 08/19/2020 23:30

**Remarks:**
Supp 2 P.Brunett

**Report:**
On 8/19/20 at approximately 1848 hours, I, Officer Brunett, was dispatched to 7583 Lamar Ct Arvada, CO, reference a domestic disturbance. While in route, dispatch advised the reporting party, Jory Cass DOB ███, was in a verbal altercation with his ex-girlfriend Evelyn Enciso DOB ███.

Upon arrival, I spoke with Jory in the backyard of the residence while Officer Conley spoke with Evelyn in the residence. Jory said he had been dating Evelyn for approximately five years before breaking up five weeks ago. He said he was being nice and allowing her to stay with him at the residence for the last four weeks so she would not be homeless. He said she had not worked in over a year, it was his residence and he paid for everything in the residence. Jory advised he had arrived today at the residence around 1800 hours. He found Evelyn in his room wrapping his bed in plastic wrap saying she was moving out and taking the bed. An argument ensued where they argued over who owned the bed. Evelyn began video recording him with her phone, Jory is adamant he pays for her phone so it is his, even though she uses it and he has a different phone he uses. Jory said he became angry she was recording him and scared she would use his angry words against him in some way. He then grabbed her phone so she would stop recording him. She began to grab for the phone and he stuck his hand out to keep her back. She continued to yell and grab at his body and his shirt. I observed the collar of his shirt was stretched, consistent with being recently pulled on. There was also a scratch on his right collar bone, which was right where the stretch marks on the shirt were. Jory said he got angry she would not stop yelling for her phone, he slammed the phone on the bedside table, than gave it back to her. He told me he did not mean to break the phone, however, he also said, the reason he slammed the phone down was something to the effect of, "you want the phone, this phone?" (then made slamming the phone motion in the air to demonstrate his actions). He then walked out of the room and waited for Officers to arrive. Jory was adamant he believed the phone was his property and not hers, saying he would never break her property no matter what happened, he only broke the phone as he thought it was his. He said the scratch did not cause him any pain.

Speaking with Officer Conley, Evelyn said there had been a verbal argument over the bed and her recording Jory. Jory had taken her phone and pushed her. As she fell she grabbed his shirt so she wouldn't fall and that was how he got scratched. Soon after Jory slammed her phone on the bedside table and broke it.

I looked up the value of the iPhone X and found it to be currently valued as $899 new. The phone had a crack on the bottom left of the screen and was no longer operable; therefore I was unable to observe the recording of the incident this phone took. This phone was collected and submitted per policy to be examined by lab technicians for retrieval of the video of this incident at a later date. Consent to search the phone was obtained from Evelyn.

**Exhibit 2**
**Response to Motion to Dismiss**

C0302020M004372                                    DISCOVERY PAGE 18

Jory said if the 911 call was reviewed it would be apparent upon review of the recording he had not been the aggressor in the situation. This recording was not yet available for review, but a copy was requested to be submitted into evidence upon receiving it. The on duty call taker in Jeffcom Regional Dispatch Center did not yield any exculpatory information regarding the breaking of the phone or how the scratch occurred.

Based on my observations of the phone being broken and Jory's admission of how he broke Evelyn's phone, I found probable cause to charge Jory Cass, DOB ███, with the crime of (DV) Criminal Mischief - CRS 18-4-501(1)(4)(C).

Due to conflicting stories and no evidence, I took no criminal action regarding the scratch and stretch marks to Jory or his shirt.

Jory was taken into custody for the above charge. He was then transported to Arvada PD headquarters for booking and then jailed at Jefferson County Jail.



**Exhibit 2**
**Response to Motion to Dismiss**



**Exhibit 2**
**Response to Motion to Dismiss**



**Exhibit 2**
**Response to Motion to Dismiss**



**Exhibit 2**
**Response to Motion to Dismiss**



Exhibit 2
Response to Motion to Dismiss



**Exhibit 2**
**Response to Motion to Dismiss**