IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 21-cv-00498-RM-KLM

JORY CASS,

      Plaintiff,

v.

EVELYN ENCISCO,

      Defendant.

_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

      This matter is before the Court on Defendant's **Motion to Dismiss Proceedings** [#51][1] (the "Motion to Dismiss") and on Defendant's **Motion to Stay Proceedings** [#52] (the "Motion to Stay").  Plaintiff filed Responses [#54, #55] in opposition to the Motions [#51, #52], and Defendant filed Replies [#56, #57].  The Motions [#51, #52] have been referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1) and D.C.COLO.LCivR 72.1.  *See* [#53].  The Court has reviewed the Motions, the Responses, the Replies, the entire case file, and the applicable law, and is sufficiently advised in the premises.  For the reasons set forth below, the Court respectfully **RECOMMENDS** that the Motion to Dismiss [#51] be **DENIED** and that the Motion to Stay [#52] be **GRANTED**.

**I. Background**[2]

---

[1]  "[#51]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF).  This convention is used throughout this Recommendation.

[2]  For the purposes of resolving the Motion to Dismiss [#51], the Court accepts as true all well-pled, as opposed to conclusory, allegations made in Plaintiff's Amended Complaint [#40].

Plaintiff has resided at 7583 Lamar Court, Arvada, Colorado 80003 (the "Property") since July 2019.  *Am. Compl.* [#40] ¶¶ 1, 7.  Plaintiff is the owner in fee simple of the Property by way of a Warranty Deed dated July 24, 2019.  *Id.* ¶ 7; *Ex. 1 to Am. Compl.* [#40-1].  Shortly after purchasing the Property, Plaintiff began renting out a portion of the Property as an Airbnb, Inc. ("Airbnb") rental to offset the cost of the mortgage.  *Am. Compl.* [#40] ¶ 8.  The bottom portion of the Property is separated from the main part of the house and has a separate entrance accessible by keypad lock.[3]  *Id.*

Defendant lived periodically at the Property while she was in a romantic relationship with Plaintiff, but Defendant was a house guest and did not contribute any monies to the Property or to living expenses.  *Id.* ¶ 9.  Plaintiff and Defendant broke off their relationship sometime between June and July 2020, and Defendant moved out of the Property on July 19, 2020.  *Id.* ¶¶ 10, 11.  A few days later, Plaintiff allowed Defendant to temporarily stay in the guest room of the main portion of the Property (not the rental unit) because she needed somewhere to stay.  *Id.* ¶¶ 12, 13.  Between August 10, 2020, and August 18, 2020, Defendant repeatedly requested that she and Plaintiff renew their romantic relationship and made numerous advances toward Plaintiff.  *Id.* ¶ 14.  Plaintiff denied every request to get back together.  *Id.*

On August 19, 2020, Plaintiff returned from staying the night at a friend's house to find his bed wrapped in plastic with all the "internal components" missing.[4]  *Id.* ¶¶ 15, 16.

---

*See Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[3]  The Amended Complaint does not further elaborate on the meaning of "[t]he bottom portion of the Property."

[4]  Again, the Amended Complaint fails to explain what "internal components" means.

On belief, Defendant was preparing to steal or sell Plaintiff's bed, for which he paid $10,000.  *Id.* ¶ 16.  Plaintiff requested that Defendant leave the Property, but Defendant refused.  *Id.* ¶ 17.  Plaintiff then called the non-emergency police.[5]  *Id.*  Once the police arrived, Defendant misstated the truth of the matter, and Plaintiff was instead taken into custody for the night and charged with Domestic Violence Criminal Mischief.  *Id.* ¶ 20. Due to Defendant's misstatements, Plaintiff was prevented from regaining full access to the Property until Defendant voluntarily left the Property approximately nine months later on April 1, 2021.  *Id.* ¶ 21.

While Plaintiff was in custody on August 19, 2020, and without his authorization, Defendant accessed one of Plaintiff's two personal desktop computers at the Property, logged into his Facebook account, and changed Plaintiff's "Relationship Status" from "Single" to "Married." *Id.* ¶ 25.  On August 21, 2020, Defendant again accessed one of Plaintiff's two desktop computers at the Property, and, without Plaintiff's knowledge or authorization, used his username and password to access his Airbnb account and changed the settings so that the account was no longer associated with him.  *Id.* ¶ 26. While doing this, Defendant changed the email address on Plaintiff's Airbnb account to her own email address, changed the password and profile picture, and used Plaintiff's personal email address to verify the information.  *Id.* ¶¶ 27, 28.  Defendant further changed the payout method on Plaintiff's Airbnb account, allowing her to access all proceeds generated from the Airbnb rental.  *Id.* ¶ 29.  On August 22, 2020, Defendant canceled a personal trip that Plaintiff had booked on his Airbnb account and initiated a refund to attempt to collect the money that Plaintiff had paid toward his trip.  *Id.* ¶ 30.

---

[5]  Neither party has explained to the Court what is meant by "non-emergency police."

Between August 22, 2020, and February 2021, with Plaintiff still unable to have full access to the house, Defendant rented out the full Property under her name, despite having no legal ownership in the Property. *Id.* ¶ 31; *Ex. 3 to Am. Compl.* [#40-3]; *Ex. 4 to Am. Compl.* [#40-4].  To rent out the Property, Defendant changed the passcode to the keypad lock of the bottom portion of the Property without Plaintiff's knowledge or authorization. *Am. Compl.* [#40] ¶ 32.  Plaintiff discovered this fact when the cleaning service he hired to clean the Property attempted to enter the unit on September 1, 2020, and could not gain access to the Property. *Id.*

As shown by the Airbnb Property Profile and Host Profile reviews, starting in August 2020, Defendant began renting out the Property to numerous guests for profit, yet none of the proceeds were shared with Plaintiff. *Id.* ¶ 34.  Plaintiff reported Defendant's actions to Airbnb, after which Airbnb restricted Plaintiff's and Defendant's access to the Airbnb platform. *Id.* ¶ 36.  Despite this, Plaintiff believes that on March 5, 2021, Defendant used Plaintiff's stolen identification to try to regain access to Airbnb. *Id.* ¶ 37; *Ex. 5 to Am. Compl.* [#40-5].  Most recently, on April 10, 2021, Defendant attempted to access Plaintiff's Ring security system account without Plaintiff's knowledge or permission. *Id.* ¶ 38.  Defendant's attempt was blocked, and Plaintiff was notified of the breach. *Id.*; *Ex. 6 to Am. Compl.* [#40-6].

On August 24, 2020, Plaintiff was provided a "Civil Assist" by police to gather his belongings at the Property. *Id.* ¶ 39.  When the police questioned Defendant about the whereabouts of Plaintiff's work laptop, Defendant told the police that Plaintiff had taken it with him. *Id.* ¶ 40.  The police later found the laptop hidden, underneath other items, on a shelf at the top of the closet of the bedroom that Defendant was sleeping in. *Id.* ¶ 41.

After regaining control of his laptop, Plaintiff immediately went to a friend's apartment to try to log in to his laptop, as he had a work meeting the next morning. *Id.* ¶ 42.  When Plaintiff attempted to log in, the name of the laptop was changed to "Everything," the password was changed, and Plaintiff was unable to access the laptop. *Id.* ¶¶ 43, 44. Plaintiff then contacted a computer technician who attempted to access the computer over the weekend without the loss of confidential work files and software. *Id.* ¶ 45.  After hours of attempting to back up the hard drive, it was determined that Defendant had reset the laptop to factory settings and all the data was lost. *Id.* ¶ 46.  As a result of these allegations, Plaintiff asserts that Defendant violated the Computer Fraud and Abuse Act ("CFAA"), committed civil theft, appropriation, and conversion, and intentionally inflicted emotional distress on him, for which Plaintiff seeks both monetary and injunctive relief. *Id.* ¶¶ 47, 72-149.

Plaintiff includes four additional claims in his Amended Complaint [#40] against Defendant. *Id.* ¶¶ 48-71.  During the August 24, 2020 Civil Assist, Plaintiff attempted to collect the vehicle which he held sole title to and for which he had paid. *Id.* ¶ 48.  However, when the police asked Defendant during the Civil Assist if Plaintiff could take his car, Defendant said no. *Id.* ¶ 50.  Plaintiff was left with no mode of transportation from the August 24, 2020 Civil Assist until a second Civil Assist occurred on February 2, 2021, when Defendant relinquished physical possession of the car. *Id.* ¶ 51.  Further, in mid-September 2020, while Plaintiff was denied full access to the Property, Defendant reported Plaintiff's two dogs to animal control to have them placed in a shelter. *Id.* ¶ 52. Defendant did not inform Plaintiff of these actions, and it was only by chance that Plaintiff found out when the shelter looked for chips in the dogs. *Id.* ¶¶ 54-55.  Plaintiff asserts

that these actions by Defendant amount to intentional infliction of emotional distress and, therefore, Plaintiff seeks monetary relief. *Id.* ¶¶ 144-149.

Additionally, during the August 24, 2020 and the February 2, 2021 Civil Assists, Plaintiff determined that some of his jewelry was missing, including his Apple Watch and his graduation ring, totaling approximately $700.00. *Id.* ¶ 58. During the February 2, 2021 Civil Assist, Plaintiff could not find his legal documents (his Social Security card, passport, and immigration papers) and discovered that Defendant had hidden Plaintiff's mail in a drawer beneath her belongings. *Id.* ¶¶ 59-61. Once Plaintiff regained access to the Property on April 1, 2021, Plaintiff noticed that several items were stolen from the Property, including a $10,000 Sleep Number Bed (the same bed that Plaintiff reported to police on August 19, 2020 that Defendant was planning to steal); a $1,500 LG 60-inch TV with a TV mount; a $600 set of dumbbell weights and weight plates; and a $300 luggage set. *Id.* ¶ 62. These items were paid for by Plaintiff and were at the Property when Plaintiff last had physical possession of the Property in August 2020. *Id.* ¶ 63. Due to these actions by Defendant, Plaintiff asserts that Defendant committed civil theft, conversion, appropriation, and intentionally inflicted emotional distress, and therefore he seeks both monetary and injunctive relief. *Id.* ¶¶ 86-149.

Lastly, Plaintiff claims that the Property suffered major damage during his absence. *Id.* ¶ 70. The new stovetop, interior walls, and perimeter fence of the Property were damaged, as was the roof to the Property's garage. *Id.* A downspout on the drainage for the Property had additionally fallen off and was crushed. [6] *Id.* Plaintiff believes that Defendant has in her possession the legal documents that Plaintiff needs to make an

---

[6] The Amended Complaint fails to provide a more detailed description of what a "downspout on the drainage" is.

insurance claim on this damage, and Plaintiff therefore seeks monetary and injunctive relief.  *Id.* ¶¶ 71, 86-149.

In the present Motions [#51, #52], Defendant seeks dismissal of the case or a stay of this action pursuant to the *Colorado River* doctrine, *see Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976), in light of the ongoing state-court action regarding ownership of the Property, which is discussed in more detail below.

## II.  Standard of Review

Federal Rule of Civil Procedure 12(b)(1) concerns whether the Court has jurisdiction to properly hear the case before it.  Because "federal courts are courts of limited jurisdiction," the Court must have a statutory basis to exercise its jurisdiction. *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002); *see* Fed. R. Civ. P. 12(b)(1). Statutes conferring subject-matter jurisdiction on federal courts are to be strictly construed.  *F & S Const. Co. v. Jensen*, 337 F.2d 160, 161 (10th Cir. 1964).  "The burden of establishing subject-matter jurisdiction is on the party asserting jurisdiction."  *Id.*  (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)).

A motion to dismiss pursuant to Rule 12(b)(1) may take two forms: a facial attack or a factual attack.  *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995).  When reviewing a facial attack on a complaint, the Court accepts the allegations of the complaint as true.  *Id.*  By contrast, with a factual attack, the moving party challenges the facts upon which subject-matter jurisdiction depends.  *Id.* at 1003.  When reviewing a factual attack on a complaint, the Court "may not presume the truthfulness of the complaint's factual allegations."  *Id.* at 1003.  The Court therefore must make its own findings of fact.  *Id.*  In order to make its findings regarding disputed jurisdictional facts, the Court "has wide

discretion to allow affidavits, other documents, and a limited evidentiary hearing." *Id.* (citing *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990); *Wheeler v. Hurdman*, 825 F.2d 257, 259 n.5 (10th Cir. 1987)).

### III.  Analysis

In *Colorado River*, "the Supreme Court recognized a narrow doctrine permitting a federal court to abstain from exercising jurisdiction when a parallel case exists in state court." *Wakaya Perfection, LLC v. Youngevity Int'l, Inc.*, 910 F.3d 1118, 1121 (10th Cir. 2018).  "[T]he *Colorado River* test requires 'exceptional circumstances' and an 'important countervailing interest' for a federal court to abstain from exercising jurisdiction based on pending litigation in state court." *Id.* (quoting *Colorado River*, 424 U.S. at 813; citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16 (1983) (noting that "the balance [is] heavily weighed in favor of the exercise of [federal] jurisdiction" in a case involving state-federal concurrent litigation)).

The *Colorado River* doctrine is essentially a two-prong test, where the  first, preliminary question is whether the state and federal cases at issue are parallel. *Fox v. Maulding*, 16 F.3d 1079, 1082 (10th Cir. 1994) (stating that the Court must "first determine whether the state and federal proceedings are parallel.  Suits are parallel if substantially the same parties litigate substantially the same issues in different forums." (citations and internal quotation marks omitted)).  Only if the Court finds that "the state and federal proceedings are parallel, it must *then* determine whether deference to state court proceedings is appropriate under the particular circumstances." *Id.* (emphasis added).

If the Court finds that the state and federal proceedings are parallel, it must then apply an eight-factor test decide whether abstention to the state court is proper. *Wakaya Perfection*, 910 F.3d at 1122.  These eight factors include:

(1) The possibility that one of the two courts has exercised jurisdiction over property

(2) The inconvenience from litigating in the federal forum

(3) The avoidance of piecemeal litigation

(4) The sequence in which the courts obtained jurisdiction

(5) The "vexatious or reactive nature" of either case

(6) The applicability of federal law

(7) The potential for the state-court action to provide an effective remedy for the federal plaintiff

(8) The possibility of forum shopping.

*Id*.

**A. Whether the Cases Are Parallel**

Plaintiff argues that "the facts alleged in the [Amended Complaint] . . . make clear that Plaintiff's claims and underlying facts are wholly different from Defendant's claims and facts in the state court case.  Almost all of Defendant's claims in the state court action go to her purported equitable interest in real property . . . .   In contrast, Plaintiff does not seek equitable relief, and none of Plaintiff's claims involve disposition of the real property at issue in the state court action."  *Response* [#54] at 2-3.

Defendant asserts that, "[i]n 2016, the parties bought a house together in Florida.  Collectively, the parties put down $25,000 for the Florida residence.  [Defendant] put down approximately $10,000-$12,000 toward the down payment. . . .   In June 2019,

[Plaintiff] sold the Florida residence and collected approximately $85,000 in net proceeds. These proceeds were the primary source of the down payment used to purchase the shared Colorado residence in July 2019." *Id.* at 3-4. However, a few months prior, in January of 2019, Plaintiff insisted that Defendant sign a quitclaim deed to the shared Florida residence. *Id.* at 3. Defendant did not understand the significance of the document. *Id.* at 4. Plaintiff did not tell or allow Defendant to seek independent counsel regarding this decision, and Plaintiff repeatedly reassured her that "the house was still 'their home' and that [Plaintiff] 'would take care of [Defendant].'" *Id.* at 3-4. Defendant then asserts that "[t]he parties have routinely rented available rooms within the shared Colorado residence to guests using the Airbnb platform" and that Defendant "contributed approximately $5,000 toward the purchase of the 2020 Tesla Model 3." *Id.* at 4.

Stemming from these circumstances, Defendant brought suit in state court in *Enciso v. Cass*, 21CV030057. *Def's. Ex. 1 to Motion to Dismiss* [#51-1]. That case was filed on January 18, 2021, in the Jefferson County District Court in Golden, Colorado, approximately two months before this federal case was filed. *Motion to Dismiss* [#51] at 1. The state court action involves identical parties to this case and the following claims by Defendant against Plaintiff: breach of fiduciary duty, breach of partnership agreement, breach of implied contract, promissory estoppel, declaratory judgment as to Defendant's ownership interest in the Property, unjust enrichment, assault, battery, and constructive trust as to Defendant's ownership interest in the Property. *Id.* Based on the most recent information provided by the parties, the state court action is ongoing, and the state court has most recently denied Plaintiff's Motion to Dismiss regarding Defendant's claims of

breach of fiduciary duty, breach of partnership agreement, declaratory judgment, unjust enrichment, and one claim for promissory estoppel.  *Reply* [#56] ¶ 10.

Ultimately, the Court agrees with Defendant that, "the cases are undoubtedly parallel."  *Motion to Dismiss* [#51] at 7.  Comparing these two cases, Defendant's state court action "involves a dispute regarding ownership of the . . . same property Plaintiff alleges Defendant damaged, stole items and documentation from, and [about which Defendant] allegedly committed a violation of the Computer Fraud and Abuse Act . . . . The state court Complaint also alleges, among other things, that the Airbnb was a partnership between the parties, not just [Plaintiff's] business, as well as an unjust enrichment claim as to [Defendant's] interest in the Tesla vehicle."  *Motion to Dismiss* [#51] at 7-8.  Consequently, the "claims Plaintiff seeks for redress are based on the same factual basis and the same evidence," substantially, as the facts underlying Defendant's state court claims for declaratory judgment of property, unjust enrichment, breach of partnership agreement and a breach of fiduciary duty.  *Reply* [#56] at 2-3, 5.  In short, the cases need only be parallel, not identical, and the Court finds that this case and the state-court action are parallel.  *See Fox*, 16 F.3d at 1081 (stating that this prerequisite is met "if substantially the same parties litigate substantially the same issues").

## B. Application of the Eight Factors

The *Colorado River* doctrine requires consideration of eight factors: (1) "the possibility that one of the two courts has exercised jurisdiction over property," (2) "the inconvenience from litigating in the federal forum," (3) "the avoidance of piecemeal litigation," (4) "the sequence in which the courts obtained jurisdiction," (5) "the vexatious or reactive nature of either case," (6) "the applicability of federal law," (7) "the potential for

the state-court action to provide an effective remedy for the federal plaintiff," and (8) "the possibility of forum shopping." *Wakaya Perfection*, 910 F.3d at 1122. "No single factor is dispositive," *Fox*, 16 F.3d at 1082, and "[t]he weight to be given to any one factor may vary greatly from case to case, depending on the particular setting of the case." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 16. The factors are not a "mechanical checklist," and the Court must engage in "a careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction." *Id.* However, abstention may be appropriate under this doctrine in light of principles of "wise judicial administration, giving regard to the conservation of judicial resources and comprehensive disposition of litigation." *Colorado River*, 424 U.S. at 817 (brackets and internal quotation marks omitted). "It is well-established that federal courts have the power to refrain from hearing, among other things, cases which are duplicative of a pending state proceeding. This latter principle—the avoidance of duplicative litigation—is at the core of the *Colorado River* doctrine." *D.A. Osguthorpe Family P'ship v. ASC Utah, Inc.*, 705 F.3d 1223, 1233 (10th Cir. 2013) (citation and internal quotation marks omitted).

Regarding the first factor, i.e., "the possibility that one of the two courts has exercised jurisdiction over property," *Wakaya Perfection*, 901 F.3d at 1122, the primary basis for Plaintiff's federal claims and Defendant's state-court claims is the dispute over the Property. The Property is located in Colorado and the Jefferson County District Court has assumed jurisdiction. *Motion to Dismiss* [#51] at 8; *see also D.A. Osguthorpe Family P'ship*, F.3d at 1234 (stating that "acquiring jurisdiction over property in the course of… litigation" means that the lawsuit is "an action in rem or quasi in rem"); *In Rem*, Black's

Law Dictionary (11th ed. 2019) (defining "quasi in rem" as "[i]nvolving or determining the rights of a person having an interest in property located within the court's jurisdiction"). The Court, therefore, finds that the first factor weighs in favor of abstention.

Regarding the second factor, i.e., "the inconvenience from litigating in the federal forum," *Wakaya Perfection,* 910 F.3d at 1122, both parties agree that inconvenience is not at issue. *Compare Response* [#54] at 13, *with Reply* [#56] ¶ 9. The Jefferson County District Court sits in Golden, which is approximately twelve miles from the federal courthouse in downtown Denver and thus "at no great geographical distance from each other," which suggests no "physical or logistical inconvenience suffered as a result of litigating in dual forums." *See D.A. Osguthorpe Family P'ship*, 705 F.3d at 1234. The Court, therefore, finds that the second factor weighs against abstention.

Regarding the third factor, i.e., "the avoidance of piecemeal litigation," *Wakaya Perfection*, 910 F.3d at 1122, the Tenth Circuit Court of Appeals has held that this factor is the "paramount consideration" of the analysis under *Colorado River. D.A. Osguthorpe Family P'ship*, 705 F.3d at 1234. "Piecemeal litigation occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results." *Leago v. Ricks*, 2021 WL 2650316, at *4 (D. Colo. June 28, 2021) (quoting *Am. Int'l Underwriters, Inc. v. Cont'l Ins. Co.*, 843 F.2d 1253, 1258 (9th Cir. 1988)). In the present case, while Plaintiff and Defendant may seek different remedies, the two suits are litigating substantially the same issues, based on substantially the same facts, but in different forums. *Compare Compl.* [#40] ¶¶ 72-149, *with Def's. Ex. 1 to Motion to Dismiss* [#51-1] ¶¶ 32-79. Underlying the claims by both parties is the debate over "ownership claims to the Property . . . the claims surrounding the Tesla vehicle, the alleged property

damage, stolen items, and stolen documents." *Reply* [#56] ¶ 12.  If both trials were to proceed, there is a substantial risk for inconsistent results on core issues that will necessarily be litigated in both forums, such as ownership interests in the Property.  Thus, because nearly all of Plaintiff's claims in this federal forum are intertwined with Defendant's state-court claims (including, for example, how Defendant's ownership claim in the Property directly relates to Plaintiff's assertion of a CFAA violation due to Defendant continuing to rent the Property via Airbnb), the Court would be considering substantially the same issues as the state court.  *Compare Compl.* [#40] ¶¶ 72-149, *with Def's. Ex. 1 to Motion to Dismiss* [#51-1] ¶¶ 32-79.  The Court, therefore, finds that the third factor weighs heavily in favor of abstention.

Regarding the fourth factor, i.e., "the sequence in which the courts obtained jurisdiction," *Wakaya Perfection*, 910 F.3d at 1122, this "is not a strict first-past-the-post analysis; rather, priority is measured 'in terms of how much progress has been made in the two actions.'" *Watermark Harvard Square, LLC v. Calvin*, No. 17-cv-00446-RM-KMT, 2018 WL 1166707, at *5 (D. Colo. Mar. 6, 2018), *report & recommendation adopted*, No. 17-cv-00446-RM-KMT, 2018 WL 1952587 (D. Colo. Mar. 29, 2018) (quoting *Cone Mem'l Hosp.*, 460 U.S. at 21-22).  "In general, the federal court should exercise jurisdiction in instances where substantial proceedings have not taken place in state court."  *Leago*, 2021 WL 2650316, at *4.  Here, there is no significant difference in the progress of either the federal or the state court proceedings, based on the latest information the parties have provided the Court.  As a preliminary matter, suit was filed by Defendant in the Jefferson County District Court on January 18, 2021, compared to the filing of this suit less than two months later on March 4, 2021.  *Motion to Dismiss* [#51] at 8.  In the federal

forum, Plaintiff's Motions for Temporary Restraining Order and a Preliminary Injunction have both been denied, and Defendant has filed these Motions to Dismiss [#51] or to Stay [#52]. *Orders* [#16, #39]. Conversely, Defendant states that the state court, at this time, has "denied [Plaintiff's] Motion to Dismiss with regard to [Defendant's] claims of breach of fiduciary duty, breach of partnership agreement, one claim of promissory estoppel, declaratory judgment, and unjust enrichment." *Reply* [#56] ¶ 10. Due to both proceedings beginning within weeks of each other, and because neither suit has made significantly more progress than the other, the Court finds that this factor weighs against abstention.

Regarding the fifth factor, i.e., "the vexatious or reactive nature of either case," *Wakaya Perfection*, 910 F.3d at 1122, Plaintiff filed this lawsuit less than two months after Defendant commenced the state court action. *Motion to Dismiss* [#51] at 8. Some courts that have given additional weight to this factor have noted that the federal suits at issue were only filed after one party lost in state court or where the state court proceeding was so far along that the federal suit constituted an aggravation. *See, e.g.*, *D.A. Osguthorpe Family P'ship*, 705 F.3d at 1235 ("And it has also not escaped our attention that [the plaintiff] came to the federal courts for relief only after receiving an unfavorable state-court ruling on arbitrability several years after litigation had begun in Utah's state-court system."). Here, however, Plaintiff's only federal question allowing the Court to maintain jurisdiction is Plaintiff's action pursuant to the CFAA, which could have been brought in the state court, and all the other claims are based on state law. *Am. Compl.* [#40] ¶¶ 3-4. There is no indication that Plaintiff could not have brought the CFAA claim and other claims as counterclaims in the state court action. One could reasonably construe Plaintiff's filing of this proceeding only weeks after the commencement of the state-court

proceeding as being vexatious and reactive in nature.  The Court, therefore, finds that the fifth factor weighs in favor of abstention.

Regarding the sixth factor, i.e., "the applicability of federal law," *Wakaya Perfection*, 910 F.3d at 1122, only Plaintiff's claim under the CFAA concerns federal law, while the other four are asserted under state law.  *Am. Compl.* [#40] ¶¶ 3-4.  "[T]his factor does not automatically compel the conclusion that the resolution of a claim arising under [federal law] is a task better suited for the federal courts."  *D.A. Osguthorpe Family P'ship*, 705 F.3d at 1235.  Nevertheless, "as a practical matter, the presence of federal claims would counsel in favor of exercising jurisdiction, while the lack of such claims renders more reasonable a court's decision to decline jurisdiction."  *MacIntyre v. JP Morgan Chase Bank*, No. 12-cv-02586-WJM-MEH, 2015 WL 1311241, at *4 (D. Colo. Mar. 19, 2015), *aff'd*, 644 F. App'x 806 (10th Cir. 2016).  Therefore, absent special considerations regarding the CFAA claim, the Court finds that this factor weighs against abstention.

Regarding the seventh factor, i.e., "the potential for the state-court action to provide an effective remedy for the federal plaintiff," *Wakaya Perfection*, 910 F.3d at 1122, the Court has:

> no trouble concluding that the Colorado state court proceedings will adequately protect not only [Plaintiff's] rights, but the rights of all the parties to this dispute.  Colorado's judiciary is chosen via a merit-selection process where judges are appointed by the governor from a list of nominees submitted by a judicial nomination commission . . . .  Judicial performance commissions evaluate the performance of judges and judges stand for retention at least two years after their appointment.  This is a lauded system that seeks to ensure judicial competence, impartiality, and independence.

*Leago*, 2021 WL 2650316, at *5 (citing David P. Hersh, *Selection of Independent Colorado Judges*, The Docket (January 23, 2015) (https://www.dbadocket.org/ethics/selection-of-independent-colorado-judges/) (stating that Colorado's system of merit

selection "ensures that judicial officers have the skills, aptitude, and inclination necessary to effectively serve on the bench")).  In addition, "the bare fact that [the plaintiff] has thus far failed to obtain [his] desired outcome in [Colorado] state-court litigation does not give us sufficient reason to think that [the plaintiff's] rights are somehow less protected in the [Colorado] state-court proceedings."  *D.A. Osguthorpe Family P'ship*, 705 F.3d at 1235. The Court, therefore, finds that this factor weighs in favor of abstention.

Regarding the eighth and final factor, i.e., "the possibility of forum shopping," *Wakaya Perfection*, 910 F.3d at 1122, Defendant states that "Plaintiff's numerous filings in different courts show forum-shopping is a concern."  *Motion to Dismiss* [#51] at 8. Plaintiff counters that "it was Plaintiff, not Defendant, who first filed a forcible entry and detainer (FED) lawsuit . . . when Defendant chose to file the State Court Action on January 18 and moved to transfer the FED action to state district court."  *Response* [#54] at 14. Despite then additionally filing this suit, Plaintiff further asserts that "Defendant cannot complain about piecemeal litigation when she is partly to blame for the number of lawsuits filed to date."  *Id*.  However, as was stated in the sixth factor, Plaintiff has made only one federal claim, and this claim was filed less than two months after Defendant's state-court action commenced, whereas all remaining claims from Plaintiff are brought under state law.  From what the parties have provided the Court, the state court has yet to make a final decision. Yet, it appears that Plaintiff has decided to shop for another forum which may eventually provide the option of a more favorable outlook on his claims.  The Court, therefore, finds that this factor weighs in favor of abstention.

Accordingly, the Court has found that three factors weigh against abstention, four factors weigh in favor of abstention, and one factor weighs heavily in favor of abstention.

The factor that is "arguably the central factor guiding application of the *Colorado River* doctrine," i.e., the avoidance of piecemeal litigation, is the one factor which weighs heavily in favor of abstention.  *See MacIntyre*, 2015 WL 1311241, at *4.  On balance, the Court finds that the factors weigh in favor of declining jurisdiction.

However, this leaves the question of whether this case should be dismissed or whether it should be stayed pending resolution of state court proceedings.  *See Leago*, 2021 WL 2650316, at *5; *MacIntyre*, 2015 WL 1311241, at *5.  When it is possible that "the state court proceedings [may] not resolve all the federal claims, a stay preserves an available federal forum in which to litigate the remaining claims, without the plaintiff having to file a new federal action."  *Fox*, 16 F.3d at 1083.  Here, because of the federal CFAA claim, the Court finds that a stay and administrative closure pursuant to D.C.COLO.LCivR 41.2 are most appropriate.  *See, e.g.*, *Cassino v. JPMorgan Chase Bank Nat'l Ass'n*, No. 20-cv-03228-RM-KLM, 2021 WL 3666964 (D. Colo. August 17, 2021).

## IV.  Conclusion

Based on the foregoing,

The Court respectfully **RECOMMENDS** that the Motion to Dismiss [#51] be **DENIED** and that the Motion to Stay [#52] be **GRANTED** to the extent that this case be **ADMINISTRATIVELY CLOSED** pursuant to D.C.COLO.LCivR 41.2, subject to reopening for good cause.

IT IS **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall have fourteen (14) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned.  A party's failure to serve and file specific, written objections waives de novo review of the

Recommendation by the District Judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996).  A party's objections to this Recommendation must be both timely and specific to preserve an issue for de novo review by the District Court or for appellate review.  *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

   Dated: February 10, 2022

                                          BY THE COURT:

                                          Kristen L.  Mix
                                          United States Magistrate Judge